**Malcolm MIMMS, Jr.**

v.

**Miriam Rose Perry MIMMS.**

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Oct. 26, 2006 Session.

Jan. 30, 2007.

Permission to Appeal Denied by
Supreme Court June 25, 2007.

William R. Willis, Jr. and Tyree B. Harris IV, Nashville, Tennessee, for the Appellant, Malcolm Mimms, Jr.

Michael W. Binkley, Nashville, Tennessee, for the Appellee, Miriam Rose Perry Mimms.

## OPINION

SHARON G. LEE, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR. and D. MICHAEL SWINEY, JJ., joined.

In this post-divorce case, the issues presented are whether the trial court erred in reducing the husband's monthly rehabilitative alimony obligation from $7,000 to $5,000, where the husband's income from his employment declined from approximately $700,000 per year to approximately $100,000 per year; and whether the trial court erred in awarding the wife $4,000 in attorney's fees. After careful review, we modify the alimony award to $2,000 per month and reverse the award of attorney's fees.

### I. Background

Malcolm Mimms, Jr. and Miriam Rose Perry Mimms were divorced by the trial court's final decree entered on January 10, 2005. The parties negotiated and executed a marital dissolution agreement ("MDA") and permanent parenting plan providing for custody and support of their two minor children. Both the MDA and parenting plan were approved by the trial court and incorporated in the divorce decree.

At the time of the parties' negotiation of the MDA, Mr. Mimms' employment status was in an uncertain and transitional state. He was employed as president and CEO of Word Entertainment, Inc. until around September of 2004, when he was notified that his contract would not be renewed. In his position with Word Entertainment, Mr. Mimms earned a compensation package worth approximately $700,000 per year. Mr. Mimms' termination agreement with Word Entertainment provided that he would continue to be paid his base salary of $450,000 per year for twelve months, ending in August 2005. The MDA attempted to address Mr. Mimms' uncertain employment status and future income, reflecting the parties' agreement regarding alimony as follows:

The parties agree that Mr. Mimms will pay to Mrs. Mimms the sum of Seven Thousand Dollars ($7,000.00) per month beginning January 2005, for a period of

eight (8) months through August 2005 and, thereafter, in an amount per month upon which the parties may agree or through mediation or, if necessary, by judicial adjudication pursuant to such terms and conditions as hereinafter provided within this Agreement. The parties agree that Mr. Mimms' obligation to pay rehabilitative alimony shall begin January 5, 2005 and shall continue for 131 months thereafter, for a total of 11 years, or until Mrs. Mimms' death or remarriage, or until Mr. Mimms' death, whichever event should occur first … The parties agree and acknowledge that Mr. Mimms is no longer employed with his former employer, but that his former employer has agreed to continue the payment of his salary and other benefits through the month of August 2005. It is anticipated that Mr. Mimms will, at that time, have other employment, but it is not known at this time what Mr. Mimms' income will be. The parties acknowledge and agree that if Mr. Mimms' income is less than he is currently receiving through his former employer, Mrs. Mimms shall not be allowed to use as a defense to any request for a decrease in his alimony obligation, in mediation or trial, that it was foreseeable or anticipated that Mr. Mimms may have a reduction in his income.

On July 19, 2005, Mr. Mimms filed a petition to modify his rehabilitative alimony, stating that his severance pay was terminating in August as expected, and that "despite his best efforts, he has been unable to obtain other employment." Ms. Mimms answered, denying that her $7,000 per month rehabilitative alimony should be reduced. After the parties' unsuccessful attempts at negotiation and mediation, the trial court heard the petition on January 12, 2006. The parties were the only witnesses to testify at the hearing. Mr. Mimms testified that he opened his law practice as a solo practitioner in September of 2005, and he presented proof that he had earned $3,410.50 per month in net income for the first four months of his practice. Mr. Mimms requested that the trial court set his alimony obligation at $1,000 per month. The trial court found that "there is no doubt that Mr. Mimms' income has decreased dramatically following his termination," but the trial court further stated that "the Court anticipates that with his knowledge and expertise as a nationally known music business attorney, Mr. Mimms has the potential to earn substantially more income as he reestablishes his private law practice." The trial court reduced Mr. Mimms' rehabilitative alimony obligation to $5,000 per month and, acting *sua sponte,* awarded Ms. Mimms her attorney's fees of $4,000.

## II. Issues Presented

Mr. Mimms appeals, raising the following issues:

1. Whether the trial court erred in reducing his rehabilitative alimony payments by only $2,000 per month and in ordering him to pay $5,000 per month in rehabilitative alimony.

2. Whether the trial court erred in *sua sponte* ordering him to pay Ms. Mimms' attorney's fees of $4,000 when he was the prevailing party and the record does not show Ms. Mimms' inability to pay her attorney's fees.

## III. Standard of Review

In a non-jury case such as this one, we review the record *de novo* with a presumption of correctness as to the trial court's determination of facts, and we must honor those findings unless there is evidence which preponderates to the contrary. Tenn. R.App. P. 13(d); *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87,

91 (Tenn.1993). The trial court's conclusions of law are accorded no presumption of correctness. *Campbell v. Florida Steel Corp.,* 919 S.W.2d 26, 35 (Tenn.1996); *Presley v. Bennett,* 860 S.W.2d 857, 859 (Tenn.1993).

■ Regarding an award of spousal support, this court has declared on numerous occasions that a trial court has broad discretion in determining the type, amount, and duration of alimony, based upon the particular facts of each case. *Wood v. Wood,* No. M2003–00193–COA–R3–CV, 2004 WL 3008875, at *4, (Tenn. Ct.App. M.S., filed Dec. 28, 2004) and cases cited therein; *Bratton v. Bratton,* 136 S.W.3d 595, 605 (Tenn.2004). As an appellate court, we are disinclined to second guess a trial court's alimony decision unless it is not supported by the evidence or is contrary to public policies reflected in the applicable statutes. *Nelson v. Nelson,* 106 S.W.3d 20, 23 (Tenn.Ct.App.2002).

### IV. Analysis

#### A. Alimony

Ordinarily, in a case involving an obligor spouse's request to modify rehabilitative alimony payments, the obligor must demonstrate a substantial and material change of circumstances. Tenn.Code Ann. § 36–5–121(e)(2). In this unusual situation, however, the parties knew a change of circumstances was likely when they executed the MDA, in that Mr. Mimms' job status and future income was uncertain. Therefore, the MDA provided that the parties would reevaluate their respective financial situations in or around August of 2005, and adjust the rehabilitative alimony payments accordingly. The trial court found as follows regarding the parties' intent in executing the alimony provision of the MDA:

The Court now determines that it was the intention of the parties that in the event of dispute, that the Court would fix the alimony obligation of Mr. Mimms based upon all of the statutory factors set out in T.C.A. § 36–5–101(d) [now recodified at § 36–5–121(i) ], and especially taking into consideration the parties' standard of living, both during their marriage and subsequent to the divorce, the need of Ms. Mimms for financial assistance and the present ability of Mr. Mimms to provide financial assistance, taking into consideration his current assets and sources of income.

■ Neither party has taken issue with the trial court's finding in this regard. Therefore, we find no error in the trial court's ruling that the statutory factors found at Tenn.Code Ann. § 36–5–121(i) are pertinent to its analysis of how much rehabilitative alimony Mr. Mimms should be required to pay.

■ We hold, however, that the trial court erred in its conclusion that the statutory factors, as applied to the facts and circumstances proven at the hearing, warranted Mr. Mimms' alimony obligation to be set at $5,000 per month. The proof shows that Mr. Mimms' expenses for child support payments and the children's education, which he is obligated to pay and has been timely paying, amount to $4,660 per month. When the $5,000 per month alimony payments ordered by the trial court are added in, Mr. Mimms' expenses of $9,660 for support of Ms. Mimms and their children exceed his 2006 pre-tax anticipated earnings of $8,333 per month from his newly-opened law practice, by more than $1,000 per month. We are of the opinion that the trial court applied an incorrect standard when it essentially took judicial notice with its perception that Mr. Mimms is "a nationally known music business attorney" and set Mr. Mimms' alimo-

ny based on his "potential to earn substantially more income."

A trial court is required to consider the following statutory factors in making an alimony award:

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3) The duration of the marriage;

(4) The age and mental condition of each party;

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in § 36–4–121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn.Code Ann. § 36–5–121(i). The two most important factors a trial court must consider are the need of the disadvantaged spouse and the obligor spouse's ability to pay. *Bratton v. Bratton*, 136 S.W.3d 595, 604 (Tenn.2004).

Regarding Ms. Mimms' need for spousal support, the record shows she received property valued at between $1,200,000 and $1,600,000 in the division of the marital estate. Ms. Mimms received both parcels of real estate owned by the parties, and the homes located thereon, in the divorce. She sold the marital residence shortly after the divorce, realizing a net profit of $192,000, and bought a smaller house, in which she currently resides and which she owns debt-free. Ms. Mimms has kept the parties' vacation home in Monteagle, Tennessee, which was unencumbered at the time of divorce and remains so. In addition, Ms. Mimms' great-aunt died after the divorce decree, and Ms. Mimms stands to inherit approximately $300,000 as a beneficiary of her great-aunt's estate. The divorce decree provided that Mr. Mimms' child support obligation for their two children, ages 16 and 14 at the time of the hearing, would be $3,310 per month, and Mr. Mimms has timely paid Ms. Mimms child support and has not requested that his child support payments be reduced.

Ms. Mimms' statement of income and expenses states that she incurs average total monthly expenses in the amount of $13,986. Her expenses are broken down into 66 subcategories. Some of these expenses appear to be of a sort that might

reasonably be curtailed or mitigated without too much difficulty. For example, she includes $794 per month in expenses associated with the vacation home; $1,500 per month for attorney's fees; a total of $1,400 per month for food (groceries and dining out); $675 per month total for vacations; $150 per month in bank fees; and $2,083 per month in estimated income taxes.

Regarding Mr. Mimms' ability to pay, he also received assets valued at over a million dollars from the division of the marital estate. Mr. Mimms' statement of assets and liabilities filed with the trial court in January 2006 shows a net worth of $1,124,888. Mr. Mimms bought a house prior to the divorce decree for $510,000, which was encumbered with a mortgage in amount of $382,927 in January of 2006. Mr. Mimms has a relatively large amount of liquid assets, with more than $500,000 in money market accounts. Mr. Mimms testified without contradiction that he had spent approximately $100,000 in his savings to meet his obligations and cover his expenses since losing his job.

Mr. Mimms testified at some length about his efforts to find employment in the music and entertainment industry after his contract was not renewed with Word Entertainment. From the proof, it appears he made significant efforts to find employment, and the trial court did not find otherwise. When these efforts proved unsuccessful, Mr. Mimms decided to open a law office as a solo practitioner. He testified that he worked all summer of 2005 toward this end and opened his practice in September of 2005. Mr. Mimms testified that had been working nine to twelve hours per day, not including weekends, in his attempt to open and build his practice. From September of 2005 to the end of the year, Mr. Mimms' law practice generated a profit of $13,642, or $3,410.50 per month before taxes.

In Mr. Mimms' sworn statement of income and expenses, he estimated his 2006 net pre-tax earnings from his law practice to be $8,333 per month. He also included monthly interest income of $1,213, and $900 per month in contributions from his new wife, for a total estimated monthly income of $10,446. Mr. Mimms listed his total monthly expenses at $12,380, which includes a $4,027 mortgage payment, $3,310 in child support, and $1,350 in education expenses for the children. The $12,380 total monthly expense does not include an estimated alimony payment. His estimated general expenses appear to be reasonable; for example, he lists a monthly food expense of $100, and $25 per month for "medical and dental" expenses in addition to his monthly $700 health insurance premium. We also note that Mr. Mimms did not include income taxes in his statement of expenses.

In summary, despite his reasonable efforts, Mr. Mimms has incurred a decrease in his income of approximately 85% since the MDA and the entry of the divorce decree. By his estimate of income and expenses, which the trial court did not find unreasonable, Mr. Mimms has a monthly deficit of $1,934 before his alimony obligation is factored in.

Regarding the other applicable statutory factors of Tenn.Code Ann. § 36–5–121(i), the parties' marriage lasted slightly longer than 20 years. At the time of the divorce, Mr. Mimms was 52 years old and Ms. Mimms was 49. Both of the parties are in reasonably good physical and mental health. Ms. Mimms worked part-time as a legal secretary for approximately five years during the early part of the marriage; she testified that she had not worked outside the home since 1989. The record shows that Ms. Mimms is making diligent efforts to rehabilitate her job skills and marketability. At the time of the

hearing, she was enrolled as a full-time college student, working toward a B.S. degree in business administration, which she anticipated earning in the fall of 2007. Ms. Mimms testified that she hoped to continue her education and obtain an MBA degree after college. In addition, Ms. Mimms is certified as a substitute teacher in the Metro Nashville public school system.

■ Taking into consideration the applicable statutory factors, we are of the opinion that the trial court erred in ordering Mr. Mimms to pay rehabilitative alimony in the amount of $5,000 per month, and that based on the proof showing Ms. Mimms' need and Mr. Mimms' current ability to pay, his alimony payments should be set at $2,000 per month. The trial court candidly stated that "the Court *anticipates* that with his knowledge and expertise as a nationally known music business attorney, Mr. Mimms has the potential to earn substantially more income as he reestablishes his private law practice." This speculation may turn out to be true; but as Mr. Mimms argues, he had not practiced law for some four years as of the hearing date, and therefore he started his practice with a client base of zero. Significantly, Tenn.Code Ann. § 36–5–121(e)(1) provides that a rehabilitative alimony award remains in the trial court's control for the duration of the award and may be modified upon a showing of substantial and material change in circumstances. The trial court ordered as follows in this regard:

[S]hould Mr. Mimms enjoy a substantial income increase, Ms. Mimms shall retain the right to apply to the Court for reestablishment of her alimony at $7,000.00

per month. For that reason, and for so long as he has an alimony obligation, Mr. Mimms shall furnish to Ms. Mimms on or before April 15th of each year, a copy of his tax return for the preceding year or a sworn statement as to income earned from all sources for the preceding year.

Thus, Ms. Mimms has an avenue to seek an increase in alimony in the event that Mr. Mimms' income substantially and materially increases.

While the parties both enjoyed a standard of living commensurate with Mr. Mimms' considerable salary during the marriage, the fact that Mr. Mimms incurred a pay cut of some 85% through no apparent fault of his own means that neither he nor Ms. Mimms may be able to maintain that standard of living. *See, e.g., Robertson v. Robertson,* 76 S.W.3d 337, 340 (Tenn.2002) ("The parties' incomes and assets will not always be sufficient for them to achieve the same standard of living after divorce that they enjoyed during the marriage. *See Crabtree,* 16 S.W.3d at 359–60."). Mr. Mimms may have to continue using part of his substantial savings to meet his expenses, and Ms. Mimms may have to curtail her expenses or find additional ways to supplement her income. In any event, we are of the opinion that considering the evidence presented in the record, the applicable statutory factors, and the equities of the situation, requiring Mr. Mimms to pay $2,000 per month in rehabilitative alimony is an equitable result.

### B. Attorney's Fees

■ Acting *sua sponte,*[1] the trial court ordered Mr. Mimms to pay Ms. Mimms' attorney's fees of $4,000. The general rule

---

1. Ms. Mimms did not ask for attorney's fees in her answer to Mr. Mimms' petition to modify rehabilitative alimony, nor did she request general relief, stating only that she "would

deny that Petitioner is entitled to any of the prayers for relief as heretofore enumerated." Ms. Mimms did not orally request attorney's fees at the hearing before the trial court.

regarding a trial court's award of attorney's fees is that "the allowance of attorney's fees is largely in the discretion of the trial court, and the appellate court will not interfere except upon a clear showing of abuse of that discretion." *Taylor v. Fezell,* 158 S.W.3d 352, 359 (Tenn.2005); *Aaron v. Aaron,* 909 S.W.2d 408, 411 (Tenn.1995). This court has provided the following guidance for determining whether an award of attorney's fees in a divorce case is proper:

> Trial courts have discretion to make awards to help a spouse defray his or her legal expenses in a divorce case. *Fox v. Fox,* 657 S.W.2d 747, 749 (Tenn. 1983); *Loyd v. Loyd,* 860 S.W.2d at 413. These awards are appropriate, however, only when the spouse seeking them lacks sufficient funds to pay his or her own legal expenses, *Houghland v. Houghland,* 844 S.W.2d 619, 623 (Tenn. Ct.App.1992); *Ingram v. Ingram,* 721 S.W.2d at 264, or would be required to deplete his or her resources in order to pay these expenses. *Harwell v. Harwell,* 612 S.W.2d 182, 185 (Tenn.Ct.App. 1980).

*Brown v. Brown,* 913 S.W.2d 163, 170 (Tenn.Ct.App.1994).

■■■ In this case, Ms. Mimms clearly does not lack sufficient funds to pay her attorney, nor would a $4,000 payment require her to deplete her considerable financial resources. We therefore reverse the trial court's award of attorney's fees against Mr. Mimms. Finally, Ms. Mimms requests an award of attorney's fees which she has incurred on this appeal. We are of the opinion that each party should bear his or her own attorney's fees on appeal.

## V.  Conclusion

The trial court's award of $4,000 in attorney's fees to Ms. Mimms is reversed. The judgment of the trial court awarding Ms. Mimms rehabilitative alimony is reduced to $2,000 per month, effective September 1, 2005, and affirmed as modified. In the event that this modification has resulted in an overpayment of alimony to Ms. Mimms for the months of September 2005 through present, the overpayment is to be credited back to Mr. Mimms at a rate of $1,000 per month until repaid. Costs on appeal are assessed to the Appellee, Miriam Rose Perry Mimms.