IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 13, 2009 Session

## WANDA BAKER
v.
## GEORGE FOSTER, DAVID FOSTER, CHARLES FOSTER, TERRY FOSTER, CLIFFORD FOSTER, NANCY SHANNON, PATRICK "JEREMY" KIRK, CAROLYN FOSTER, as Guardian of BLAKE FOSTER, BRANDON FOSTER, ASHLEY FOSTER and LYNDALL L. DANIEL

**Appeal from the Chancery Court for Henderson County**
**No. 14225      James F. Butler, Chancellor**

**No. W2009-00214-COA-R3-CV - Filed January 20, 2010**

This boundary dispute appeal involves an indispensable and necessary party. The plaintiff and the defendants own adjoining tracts of land in a rural area. After questions about their common boundary arose, the defendants hired a surveyor. The defendants' surveyor concluded that the common boundary lay further west than the plaintiff believed. The plaintiff filed a lawsuit seeking a judicial determination of the proper boundary and an award of damages for timber that the defendants had cut. After some delay, a bench trial was held. During the trial, surveyors for both parties testified that the trial court's resolution of the boundary dispute could affect the owner of the parcel to the east of the defendants. After the trial, the trial court issued an order specifying where the boundaries of the defendants' land should be staked out. After the boundaries were marked in accordance with the trial court's order, the defendants filed a motion to reopen proof, arguing that the boundaries established by the trial court encroached on land owned by the defendants' neighbor to the east. The trial court denied the motion and rendered a final judgment. The defendants appeal. We vacate the trial court's order, concluding that the landowner to the east of the defendant was an indispensable and necessary party and that the trial court erred in declining to join him as a party once the proof indicated that the neighboring landowner could be affected by the resolution of the boundary dispute between the plaintiff and the defendants.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Vacated
and Remanded**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J.,
W.S., and DAVID R. FARMER, J., joined.

James Stephen King, Memphis, Tennessee, for the Defendants/Appellants, George Foster,
David Foster, Charles Foster, Terry Foster, Clifford Foster, Nancy Shannon, Patrick
"Jeremy" Kirk, Carolyn Foster, as Guardian of Blake Foster, Brandon Foster, Ashley Foster
and Lyndall L. Daniel.

Ricky L. Wood, Parsons, Tennessee, for the Plaintiff/Appellee, Wanda Baker.

## OPINION

### FACTS AND PROCEEDINGS BELOW

In August 1951, H.W. Foster and his wife, Berna Foster, purchased two contiguous
tracts of land ("Fosters' tracts") in Henderson County, Tennessee. One tract was trapezoid-
shaped ("Trapezoid tract") and the other was rectangle-shaped ("Rectangle tract"). The
southern boundary of the Fosters' Trapezoid tract lay along a portion of the northern
boundary of the Rectangle tract, such that the Fosters' tracts together formed a reversed Z-
shaped boundary with the adjoining parcel of land to the northwest.

In 1993, Floyd Baker and his wife, Wanda Baker, purchased the adjoining parcel to
the northwest ("Baker tract"). In 1996, Floyd Baker conveyed full title in the Baker tract to
Plaintiff/Appellee Wanda Baker, via quitclaim deed, for estate planning purposes.

Meanwhile, at some point in the early 1960s, H.W. Foster's son, George Foster,
assisted his uncle in constructing a fence purportedly along the boundary between the
Fosters' Trapezoid tract and the Baker tract.[1] To distinguish it from other fences in the area,
for purposes of this appeal, this fence will be referred to as "the dividing fence."

Berna Foster survived H.W. Foster and died intestate in February 1999, at which time
the Fosters' tracts passed by intestate succession to her heirs, Defendants/Appellants George
Foster, David Foster, Charles Foster, Terry Foster, Clifford Foster, Nancy Shannon, Patrick

---

[1]The record is unclear on whether this dividing fence remained wholly intact when the dispute
between Baker and the Fosters arose.

Jeremy Kirk,[2] Blake Foster, Brandon Foster and Ashley Foster ("Fosters"). When the Fosters inherited the property, they decided to divide it among themselves and share the money earned from selling the timber on the land. To that end, the Fosters hired licensed surveyor Lyndall Daniel to prepare a survey of the property.

Daniel gathered the deeds to both of the Fosters' tracts as well as the adjacent Baker tract, surveyed the land, and marked the boundaries in accordance with his survey. According to Daniel's survey, the boundary between the Fosters' tracts and the Baker tract lay to the west side of the dividing fence, on the Baker tract. Relying on Daniel's survey, the Fosters apparently cut timber in the contested area. That act gave rise to the instant boundary dispute between Baker and the Fosters.

On July 24, 2000, Wanda Baker filed a lawsuit naming the Fosters and Daniel as defendants. Baker's complaint sought a determination of the boundary between the two properties and damages for trespass and cutting of timber. The Fosters and Daniel answered and counterclaimed for damages for trespass and interference with the lawful survey of property. The counterclaim added Floyd Baker as a third party defendant. Discovery ensued. During the pendency of the case, Baker hired her own surveyor, Eddie Coleman, to survey the disputed boundary.

After some delay,[3] a bench trial was held January 22 and 29, 2004. At the trial, the trial court heard testimony from, among others, the Fosters' surveyor, Daniel, and Baker's surveyor, Coleman.

In his testimony, Daniel explained that he surveyed the Baker tract, the Fosters' Trapezoid tract and the Fosters' Rectangle tract because he could not ascertain the correct boundaries without surveying all of the tracts. From his survey, Daniel concluded that the disputed boundary line should be on the west side, or Baker side, of the dividing fence. He opined that the disputed boundary line should be drawn from the southwestern corner of the Trapezoid tract, advancing to the northeast, to the northwestern corner of the Trapezoid tract. While Daniel acknowledged this boundary would shift the entire Trapezoid tract to the west, he noted that the parties did not dispute the length of the Trapezoid tract's northern border,

---

[2] In the proceedings below, it was disputed whether Patrick Jeremy Kirk was an heir of Berna Foster. This is not an issue on appeal.

[3] The record indicates that the parties unsuccessfully attempted mediation. Additionally, the trial court issued an injunction requiring the Fosters to remove a plastic fence placed upon the contested property during the pendency of the case. The record also includes a letter to the parties from the original trial judge, Chancellor Joe C. Morris, indicating that the case would be referred to a special master; however, the record does not include a report of the special master. These are not raised as issues on appeal.

only where it began.  On cross examination, Daniel admitted that, if the trial court adopted the boundaries in his survey, this would encroach on land claimed by the landowner to the east of the Trapezoid tract, Denny Beecham.

In response to Daniel's testimony, Coleman testified about the survey of the disputed boundary that he conducted at the request of Baker.  He noted that the deeds for both the Baker tract and the Fosters' Trapezoid tract contained identical calls, bearings, distances and monuments.  His testimony appeared to indicate that he and Daniel agreed on the northwestern and northeastern corners of the Fosters' Trapezoid tract, because their surveying pins were located next to each other in the field.  From his survey, Coleman concluded that the disputed boundary line should be drawn from the northwestern corner of the Fosters' Trapezoid tract, advancing southwest, to the southwestern corner of the Fosters' Trapezoid tract.  This resulted in a boundary on the east side, or Foster side, of the dividing fence.

On cross examination, Coleman was asked to draw the disputed boundary line of the Trapezoid tract from the southwestern corner to the northwestern corner, in the manner that Daniel advocated.[4]  He did so with a green dotted line.  Coleman's testimony also indicated that the trial court's disposition of the case could create a boundary dispute between the Fosters and the owner of the adjoining tract to the east, Denny Beecham.  At the close of the trial, the trial court took the case under advisement.

In a letter filed August 5, 2005, the trial court announced its ruling.  At the outset, the trial court found that both surveyors, Daniel and Coleman, agreed on the location of a particular point, on the northwestern corner of the Trapezoid tract.  It observed that drawing the disputed line from that agreed-upon point to the southern boundary line to form the southwest corner of the Trapezoid tract would not close the Trapezoid tract.  Moreover, the amount of acreage set forth in the deeds of both the Baker tract and the Fosters' Trapezoid tract could not be reconciled with the computer calculation of the acreage.  Therefore, to determine the location of the disputed boundary, the trial court ordered the surveyors to locate on the ground the agreed-upon northwestern corner and then stake the remaining corners of the Trapezoid tract in accordance with the trial court's directions, referencing an existing ditch.  The trial court's letter said that staking the boundaries of the Trapezoid tract as directed "should close."  The trial court reserved the issue of damages for timber cutting until the surveyors had staked the Trapezoid tract as directed and the boundary line was established on the ground.

_____

[4]The record indicates that Coleman had drawn the line at an earlier hearing held October 3, 2002; however, the controversy was addressed again at the bench trial.

Subsequently, Baker's surveyor, Coleman, staked out the boundary as directed by the trial court. The Fosters then filed a motion to reopen proof,[5] arguing that the trial court's order created a boundary dispute between the Fosters and neighbor Denny Beecham ("Beecham"). In support of the motion, the Fosters filed Beecham's affidavit, in which he stated that the boundary established by the trial court pushed the Fosters' Trapezoid tract 50 to 280 feet onto his property.

On January 30, 2008, the trial court issued a written order incorporating its earlier letter ruling. The order also appointed a special master to determine the value of the timber cut on the Baker tract by the Fosters, and denied the Fosters' motion to reopen proof. Thereafter, the special master calculated the value of the timber cut and filed a report concluding that $2890 of timber had been cleared by the Fosters. On January 22, 2009, the trial court approved the special master's report and awarded Baker damages in accordance with the special master's calculations. The Fosters now appeal.

### ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, the Fosters raise the following issues:

1) Whether the trial court erred when it found that the surveyors agreed on the location of the northwestern and northeastern corners of the Trapezoid tract;
2) Whether the green dotted line was the boundary line shown by Coleman from the poplar tree included in both the Baker and Fosters' deed descriptions;
3) Whether the trial court erred in failing to address whether the Fosters' Rectangle tract encompassed part of the disputed property;
4) Whether the trial court erred in finding that the Fosters did not adversely possess all property east of the dividing fence; and
5) Whether the trial court erred in failing to reopen proof when the trial court's placement of the boundary line created an encroachment upon the property of a nonparty.

As this case was tried by the trial court sitting without a jury, we review the trial court's findings of fact *de novo* accompanied by a presumption of correctness, unless the evidence preponderates to the contrary. *Mimms v. Mimms*, 234 S.W.3d 634, 636-37 (Tenn. Ct. App. 2007) (citing TENN. R. APP. P. 13(d); *Union Carbide Corp. v. Huddleston*, 854

_____

[5]The Fosters filed two post trial motions: a motion to reopen proof and a motion for status conference and to appoint a special master to set the boundaries for the property. Both motions asked the trial court to hear Denny Beecham's testimony on the potential effect of the trial court's order on his property. For clarity, both motions will be referred to collectively as the "motion to reopen proof."

S.W.2d 87, 91 (Tenn. 1993)). The trial court's conclusions of law, however, are reviewed *de novo* without a presumption of correctness. **See Mimms**, 234 S.W.3d at 637 (citing **Campbell v. Fla. Steel Corp.**, 919 S.W.2d 26, 35 (Tenn. 1996); **Presley v. Bennett**, 860 S.W.2d 857, 859 (Tenn. 1993)).

## ANALYSIS

Because the issue appears to be dispositive of this appeal,[6] we consider first the question of whether the trial court erred in declining to reopen proof to consider whether the boundary it established encroached on land belonging to the Fosters' neighbor, Beecham.

Rule 19 of the Tennessee Rules of Civil Procedure governs the joinder of indispensable and necessary parties:

> A person who is subject to service of process shall be joined as a party if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest, or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reasons of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. If the person properly should join as a plaintiff but refuses to do so, he or she may be made a defendant, or in a proper case, an involuntary plaintiff.

TENN. R. CIV. P. 19.01. The rule "is designed to protect the interests of absent persons as well as those already before the court from multiple litigation and inconsistent judicial determinations." **Citizens Real Estate & Loan Co., Inc. v. Mountain States Dev. Corp.**, 633 S.W.2d 763, 766 (Tenn. Ct. App. 1981) (citing 7 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE, § 1602).

We note that the language of Rule 19 is mandatory and directive; one who is an indispensable and necessary party "*shall* be joined as a party." TENN. R. CIV. P. 19.01 (emphasis added). The requirement of joinder of indispensable and necessary parties "appears absolute and inflexible," and applies to both trial courts and appellate courts. **Pope v. Kelsey**, No. 86-17-II, 1986 WL 6564, at *2 (Tenn. Ct. App. June 13, 1986), *no perm. app.*

---

[6]For this same reason, our recitation of the facts omits numerous details that would be necessary for resolution of the other issues raised in this appeal.

(quoting *Glickauf v. Moss*, 320 N.E.2d 132, 135-316 (Ill. 1974)).  When an indispensable and necessary party has not been joined, neither the trial court nor the appellate court may proceed further with the matter.  *Id.*  The parties are of course obliged to bring to the court's attention the necessity of such a joinder; however, even if the parties fail to do so, the trial court or even the appellate court must *sua sponte* enforce this principle of law.  *Id.* (quoting *Glickauf*, 320 N.E.2d at 135-36).

Persons whose real property interests may potentially be affected by a trial court's ruling have consistently been recognized as indispensable and necessary parties.  *See Roberts v. England*, No. M1999-02688-COA-R3-CV, 2001 WL 575560, at * 2 (Tenn. Ct. App. May 30, 2001), *no perm. app.* (citing *Citizens Real Estate & Loan Co., Inc.*, 633 S.W.2d at 764-66; *Lee v. Brown*, No. 89-230-II, 1989 WL 147497, at *1 (Tenn. Ct. App. Dec. 8, 1989), *no perm. app.*; *Stuart v. City of White Pine*, No. 57, 1988 WL 86585 (Tenn. Ct. App. Aug. 19, 1988), *no perm. app.*; *St. Clair v. Evans*, No. 829, 1988 WL 102767, at *2 (Tenn. Ct. App. Oct. 6, 1988), *aff'd on app. after remand*, 872 S.W.2d 49 (Tenn. Ct. App. 1993); *Carpenter v. Yount*, No.14, 1986 WL 10150, at *3-4 (Tenn. Ct. App. Sept. 19, 1986), *no perm. app.*).

In *Roberts*, the Court noted that the appropriate inquiry to determine if an adjoining landowner is an indispensable and necessary party is "whether any resolution of the issues presented in the lawsuit *could have* affected" the adjoining landowner's real property interest, not whether the trial court's final ruling actually affected the adjoining landowner.  *Id.* at *4 (emphasis added).  Thus, the joinder should occur when there is some indication in the record that an identifiable landowner exists whose interests might be affected by the lawsuit, even if it appears likely that the third party landowner might agree with the trial court's judgment. *See id.* at *3 (citing *Lee*, 1989 WL 147497, at *1; *St. Clair*, 1988 WL 102767, at *2).

In cases in which the appellate court has found that an adjoining landowner is an indispensable and necessary party and was not joined in the proceedings below, the appellate court has vacated the judgment of the court below and remanded the case with instructions to ensure that all proper parties are joined before a final determination is made of the property owners' rights.  *Id.* at *3.  The purpose of the remand is not for a trial *de novo*; rather, the purpose is to join the absent third parties and give them the opportunity to present new evidence as deemed necessary by the trial court.  *See id.* at *4.

In the case at bar, during the trial, both surveyors testified that resolution of the boundary dispute between Baker and the Fosters could affect the property rights of Beecham, the owner of the parcel to the east of the Fosters' Trapezoid tract.  At that point, the parties should have, but failed to, bring to the trial court's attention that joinder of Beecham was necessary.  Once the boundary of the Fosters' Trapezoid tract was staked out in accordance with the trial court's order, Foster submitted a sworn affidavit by Beecham

stating that the boundaries established by the trial court encroached on his property. This shows clearly, under ***Roberts*** and the cases cited therein, that Beecham is an indispensable and necessary party.

In the proceedings below, the trial court patiently considered the complicated evidence in this nearly decade-long boundary dispute and came to a carefully-considered resolution of the matter. Unfortunately, despite this, we must conclude that it was error not to join Beecham in the litigation when it became apparent that his property rights could be affected by the disposition of the case. As such, pursuant to ***Roberts***, we vacate the judgment of the trial court and remand with instructions to join Beecham and any other adjoining landowners whose property rights may be affected by the final judgment. On remand, the trial court may permit the submission of such evidence as it deems necessary.

### CONCLUSION

The decision of the trial court is vacated, and the cause is remanded for further proceedings consistent with this Opinion. The costs of this appeal are taxed to the Appellee Wanda Baker, and her surety, for which execution may issue if necessary.

_____
HOLLY M. KIRBY, JUDGE