IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 19, 2010 Session

## ROBERT E. COVINGTON v. BARBARA COVINGTON

**Appeal from the Chancery Court for Hamilton County**
**No. 07-0565     Howell N. Peoples, Chancellor**

**No. E2009-01583-COA-R3-CV - FILED JUNE 18, 2010**

In this divorce case following a twenty-one year marriage, the Trial Court designated Barbara Covington ("Wife") as primary residential parent, distributed the marital property, and awarded Wife transitional alimony. Robert Covington ("Husband") appeals claiming the Trial Court incorrectly determined that the entire amount of each party's pension was separate property. Husband also appeals the award of transitional alimony, claiming that both the amount and the length of time he was ordered to make payments were excessive. Wife claims she should have been awarded rehabilitative alimony after the transitional alimony ended. We hold that the Trial Court incorrectly classified as separate property those portions of the parties' pensions earned during the marriage. We also conclude, however, that the overall property division nevertheless was equitable, and so we find the error to be harmless. We agree with Husband that the amount of transitional alimony awarded was excessive and modify the award. As so modified, the judgment of the Trial Court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the
Chancery Court Affirmed as Modified; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and NORMA MCGEE OGLE, SP., J., joined.

Jillyn M. O'Shaughnessy, Chattanooga, Tennessee, for the Appellant, Robert E. Covington.

Glenna M. Ramer, Chattanooga, Tennessee, for the Appellee, Barbara Covington.

# OPINION

## Background

This divorce case was filed by Husband in June 2007. Husband sought a divorce from Wife on the ground of inappropriate marital conduct or, in the alternative, irreconcilable differences. The parties have two sons who were 12 and 18 years old when the divorce was filed. Husband's proposed parenting plan provided that parenting time with the minor child be split equally, but that Wife be designated the primary residential parent.

Wife answered the complaint and denied that she had engaged in inappropriate marital conduct, although she admitted that irreconcilable differences existed between the parties. Wife filed a counterclaim seeking a divorce from Husband based on inappropriate marital conduct or, alternatively, irreconcilable differences. Wife requested that she be designated the minor child's primary residential parent.

Husband currently is 48 years old and Wife is 54. At the time of the divorce, the parties had been married for 21 years, since September 27, 1987. After an unsuccessful attempt at mediation, a three day trial began on March 16, 2009. We will summarize only that testimony which is relevant to the specific issues on appeal.

Husband testified that he has a bachelor of science degree in psychology from Middle Tennessee State University. Wife has a bachelor of science degree from the University of Tennessee at Chattanooga. Husband explained that he and Wife first met when both were working for State Farm Insurance Company ("State Farm"). Husband worked for State Farm from 1985 until December 31, 1995, at which time he terminated his employment and became an independent contractor with State Farm.

Husband testified that Wife also had worked for State Farm. Wife worked there for approximately twenty years, beginning in 1984 and ending when she voluntarily terminated her employment in 2003. Wife quit working for State Farm because of the stress. Husband initially was in agreement that Wife should quit her job with State Farm. However, according to Husband, he and Wife eventually discussed the fact that she either would have to find a job or they would have to scale back on their standard of living. Husband testified that Wife still was unemployed when he moved out of the marital residence.

Husband claimed that in order to make ends meet after Wife quit her job, he had to borrow against a home equity line of credit and various life insurance policies. Husband claimed that Wife asked him why he could not make enough money for them to live without her having to work. Husband told Wife that if she did not get a job, they would

eventually go broke. When asked if Wife would have any problem finding a job, Husband stated that with her education and experience, she should have no problem finding a job in the insurance industry. He added that she could find a job working for a State Farm agent making between $27,000 to $32,000 a year.

Husband testified that Teri Marshall ("Marshall") began working for him in 2003 as an office manager. Husband admitted that he began having an affair with Marshall in July of 2005. Husband moved out of the marital residence in October 2006, but returned in November. He moved out of the marital residence for good in December 2006. Although Husband originally denied having an affair, he claimed that Wife knew about the affair by the time he moved out of the marital residence. Husband currently lives with his mother and has since moving out of the marital residence.

Husband testified that his monthly gross income is $10,544, and his net monthly income is $7,544. Husband also filed as an exhibit an expense statement detailing his monthly expenses, which included a mortgage on a home, etc. Husband claimed that his monthly expenses totaled $6,681. Husband acknowledged that his expense statement included an estimate of the expenses that would be incurred when he moves out of his mother's house and actually buys a house.

Husband admitted that Wife may need some financial assistance in order to adjust to the economic situation caused by the divorce. Husband testified that he paid Wife anywhere from $3,000 to $4,000 a month ever since they separated. Husband also testified that he cannot continue to pay that much money because he has borrowed all that he can from his line of credit, and that he was using this borrowed money to make the monthly payments to Wife. Husband testified that he also cashed out an IRA that was valued at $28,754 in order to keep current on various obligations, including quarterly payments to the IRS.

Notwithstanding his claim of running out of money, Husband admitted to "dissipating" marital assets by spending money on Marshall. Husband admitted he "purchased a ring for Marshall sometime in 2006, some furniture, another piece of jewelry or two, and then we have had meals out, and a weekend trip or, you know, weekend travel." A detailed list of the money Husband admitted to spending on Marshall was admitted at trial. This exhibit, titled "Dissipation by Husband," shows Husband spent $19,949.65 on Marshall. While Husband disputed a few of the entries, he acknowledged that, for the most part, the exhibit was accurate. The funds spent on Marshall include an $8,000 ring, $1,100 toward getting the rent on Marshall's apartment caught up, and two trips to Florida with Marshall and her two daughters. During 2006, Husband paid Marshall employment bonuses equivalent to $1,000 per month. Husband asserted, however, that these bonuses were

commensurate with the amount of work being performed by Marshall and were consistent with the pay of other employees of State Farm agents performing the same work.

Husband's father died in October of 2006. Husband inherited two annuities with a combined value of approximately $173,683. Husband intends to put these annuities in his name and his mother's name. Husband also inherited some guns from his father.

Wife testified that when she quit her job in 2003, Husband was in full agreement and stated that he could handle paying for everything even without her income. Wife began working for Webco in late 2006 in sales and continues to work there. The success of Webco is dependent upon on the viability of the construction industry, and sales have declined due to the economy. In 2007, Wife earned $26,735.04, but she earned only $9,266.38 in 2008. Wife indicated that she intends to find more stable employment.

Wife filed as an exhibit at trial an income and expense statement. According to this statement, Wife was making only $184.77 per month at Webco, and was receiving $3,000 per month from Husband. Thus, her total monthly income was $3,184.77. Her monthly expenses totaled $5,116.00, which included $2,150 for the mortgage and insurance on the marital residence and $860.00 in payments for credit cards. The marital residence has five bedrooms and four bathrooms.

Wife testified that she worked for State Farm for almost 20 years. Three of those years were before the parties were married. Thus, Wife asked that 15% of her pension be considered her separate property. Wife acknowledged that she was making approximately $70,000 per year when she quit her job at State Farm. She also acknowledged that she generally is in good health and there is nothing preventing her from finding a better paying job from what she currently is earning.

Following trial, the Trial Court awarded Wife a divorce based on Husband's admitted inappropriate marital conduct. The Trial Court designated Wife as the minor child's primary residential parent. The Trial Court concluded that Husband's gross annual income was $126,000, and Wife was capable of earning $20,000 annually. Based on these figures, Husband was ordered to pay child support in the amount of $1,029.15 per month.[1]

Both parties had a pension plan through State Farm. At the time of the divorce, Wife's pension plan would provide her an annual benefit of $16,661 upon her retirement. Wife earned this pension by working at State Farm for 20 years and the parties were married

---

[1] The amount of Husband's child support payment and the designation of Wife as primary residential parent are not at issue on appeal. We have omitted trial testimony pertaining to these issues.

for 17 of those 20 years. Husband also had a retirement plan based on his 11 years as a State Farm employee. The parties were married for 9 of those 11 years. Husband's pension plan will provide him an annual benefit upon his retirement of $6,480. The Trial Court concluded that these pension plans were separate property and awarded Wife her entire plan and Husband his entire plan as separate property. Excluding Husband's inheritance, the vast majority of the remaining property was found to be marital property. The Trial Court ordered the parties to sell the marital residence but allowed Wife to remain in possession of the marital residence until it was sold.

The Trial Court determined that the marital property should be split equally and that the equity in the marital residence should be used to make the allocation equal. Wife was awarded a total of $108,547.48 in marital assets and ordered to pay $11,990.00 in marital debt, resulting in a net award to Wife of $96,557.59. Husband was awarded a total of $64,674.59 in marital assets and ordered to pay $50,243.00 in marital debt, resulting in a net award to Husband of $14,431.59. In order to equalize the overall award, the Trial Court ordered that Husband receive the first $82,126.00 in equity from the sale of the marital residence, with the remaining equity to be divided equally. The Trial Court also awarded Wife transitional alimony for six years. According to the Trial Court:

> It is ORDERED that until the marital residence is sold, [Husband] shall pay transitional alimony in the amount of Three Thousand Dollars ($3,000.00) per month on the 1st day of each month, beginning April 1, 2009. Said alimony shall be deductible by [Husband] and taxable to [Wife].

> It is ORDERED that beginning the first full month following the sale of the marital residence, [Husband] shall pay transitional alimony in the amount of Four Thousand Dollars ($4,000.00) per month on the 1st day of each month and shall continue to pay $4,000 per month on the first day of each month thereafter until the first of the following events: the death of either party, the remarriage of the Wife or until March 1, 2015. Said alimony shall be deductible to [Husband] and taxable to [Wife].

Finally, the Trial Court ordered Husband to pay Wife's attorney fees in the amount of $25,024.25.

Husband appeals claiming the Trial Court erred when it concluded that each party's State Farm pensions were entirely separate property. Husband also claims the award of transitional alimony to Wife was excessive and the award of attorney fees was error.

Wife also appeals. Wife asserts that the Trial Court properly classified the State Farm pensions as separate property and properly awarded transitional alimony for the amount and duration set forth in the final decree. Wife, however, claims that the Trial Court erred by not awarding her rehabilitative alimony once the transitional alimony ends. Wife claims that, once the transitional alimony ends, she should be awarded rehabilitative alimony in the amount of $3,000 per month until she becomes eligible for her pension at age 62. Wife also requests an award of attorney fees incurred on appeal.

## Discussion

The factual findings of the Trial Court are accorded a presumption of correctness, and we will not overturn those factual findings unless the evidence preponderates against them. *See* Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). With respect to legal issues, our review is conducted "under a pure *de novo* standard of review, according no deference to the conclusions of law made by the lower courts." *Southern Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001). This Court reviews a trial court's decision with respect to an award of alimony under an abuse of discretion standard. *See Garfinkel v. Garfinkel*, 945 S.W.2d 744, 748 (Tenn. Ct. App. 1996).

We first address whether the Trial Court properly classified the parties' pensions as separate property. In *Langschmidt v. Langschmidt*, 81 S.W.3d 741 (Tenn. 2002), the Tennessee Supreme Court noted that "marital property" includes "any increase in value during the marriage of . . . separate property . . . if each party substantially contributed to its preservation and appreciation and the value of vested pension, retirement or other fringe benefit rights accrued during the period of the marriage." *Id*. at 745 (quoting Tenn. Code Ann. § 36-4-121(b)(1)(B)). In addition, "separate property" includes "appreciation of property owned by a spouse before marriage" except when that property is properly characterized as marital property. *Id*. (quoting Tenn. Code Ann. § 36-4-121(b)(2)(C)). Relying on these statutory provisions and relevant case law, in *Pedine v. Pedine*, No. E2008-00571-COA-R3-CV, 2009 WL 585943 (Tenn. Ct. App. March 9, 2009), *no appl. perm. appeal filed*, we easily concluded that "[h]ow to characterize retirement accounts *that accrue during the marriage* is much simpler to answer as such benefits 'clearly are marital property under Tennessee law.'" *Pedine*, 2009 WL 585943, at *6 (quoting *Langschmidt*, 81 S.W.3d at 749) (emphasis added). *See also Snodgrass v. Snodgrass*, 295 S.W.3d 240, 246 (Tenn. 2009)(marital property includes contributions to an employment related 401(k) account made during the marriage, net gains on those contributions, as well as net gains on the pre-marital balance of the 401(k) when those gains accrue during the marriage).

In *Pedine*, we ultimately concluded that the appropriate way to divide the husband's pension between what accrued prior to and what accrued during the marriage was as follows:

> Husband also has a pension with his employer. The value of this pension is based on years of service. Counsel for Husband acknowledged at trial that the plan was valued at $214,497 on the day of trial. Because we know the exact value of the pension as of the trial date, it is much easier to determine the amount that is separate property since "[o]nly the portion of the retirement benefits accrued during the marriage are marital property subject to equitable division." *Cohen v. Cohen*, 937 S.W.2d 823, 830 (Tenn. 1996). As of the trial date, Husband had been employed with the same employer for thirty-two years. Fifteen of those years were prior to the marriage at issue, and seventeen years of service were earned while the parties were married for the second time. Accordingly, 47% of the $214,497, or $100,813.59, is Husband's separate property, and the remaining 53%, or $113,683.41, is properly characterized as marital property.

*Pedine*, 2009 WL 585943, at *6 (footnote omitted).

Returning to the present case, we agree with Husband that only that portion of the parties' pensions earned prior to their marriage is properly classified as separate property, and the Trial Court erred when it classified each parties' entire pension as separate property. According to Husband, after subtracting each party's separate part of their pension, in order for each party to receive one-half of the remaining value of the pensions, he should receive enough of Wife's pension to enable him to receive an additional $4,423.83 per year upon Wife's retirement.

A trial court has wide discretion in dividing the interest of the parties in marital property. *Barnhill v. Barnhill*, 826 S.W.2d 443, 449 (Tenn. Ct. App. 1991). As noted by this Court in *King v. King*, when dividing marital property:

> The trial court's goal in every divorce case is to divide the parties' marital estate in a just and equitable manner. The division of the estate is not rendered inequitable simply because it is not mathematically equal, *Cohen v. Cohen*, 937 S.W.2d 823, 832 (Tenn. 1996); *Ellis v. Ellis*, 748 S.W.2d 424, 427 (Tenn.

1988), or because each party did not receive a share of every item of marital property. *Brown v. Brown*, 913 S.W.2d [163] at 168.... In the final analysis, the justness of a particular division of the marital property and allocation of marital debt depends on its final results. *See Thompson v. Thompson*, 797 S.W.2d 599, 604 (Tenn. App. 1990).

*King v. King*, 986 S.W.2d 216, 219 (Tenn. Ct. App. 1998) (quoting *Roseberry v. Roseberry*, No. 03A01-9706-CH-00237, 1998 WL 47944 (Tenn. Ct. App. Feb.9, 1998), *no appl. perm. appeal filed*).

Excluding their pension, each party was awarded net marital assets of $96,557.59.[2] Although the Trial Court did conclude that the marital property should be divided equally, it reached this conclusion in conjunction with its determination that Wife was an economically disadvantaged spouse, that her future earnings never would match those of Husband, and that she should receive her entire pension.

We conclude that the portion of each party's pension earned during the marriage was marital property. We further conclude that even though the Trial Court incorrectly found that each party's pension was entirely separate property, when considering the relevant statutory factors set forth in Tenn. Code Ann. § 36-4-121(c) (2005), the overall property distribution made by the Trial Court nevertheless was equitable. Thus, although we reclassify a portion of each party's pension, the Trial Court's overall property distribution remains intact and is affirmed.

We next address the Trial Court's award of alimony. The pertinent statute setting forth the factors to consider when determining whether to award alimony is Tenn. Code Ann. § 36-5-121(i) (2005), which provides as follows:

(i) In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:

---

[2] As set forth previously, the Trial Court concluded that Husband was entitled to the first $82,126 in proceeds from the sale of the marital residence, and thereafter any remaining equity was to be split equally. When we state that each party was awarded net proceeds of $96,557.59, this does not take into account any additional amounts the parties may receive from the remaining equity after the sale of the marital residence.

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3) The duration of the marriage;

(4) The age and mental condition of each party;

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in § 36-4-121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

"The two most important factors a trial court must consider are the need of the disadvantaged spouse and the obligor spouse's ability to pay." *Mimms v. Mimms*, 234 S.W.3d 634, 638 (Tenn. Ct. App. 2007) (citing *Bratton v. Bratton*, 136 S.W.3d 595, 604 (Tenn. 2004)).

Tenn. Code Ann. § 36-5-121(g)(1) (2005) defines "transitional alimony" as "a sum of money payable by one (1) party to, or on behalf of, the other party for a determinate period of time. Transitional alimony is awarded when the court finds that rehabilitation is not necessary, but the economically disadvantaged spouse needs assistance to adjust to the economic consequences of a divorce . . . ."

Wife was earning very little at the time of trial and did not appear to be particularly motivated to change that situation. Nevertheless, the Trial Court found that she could earn at least $20,000 annually. In addition, Wife's income and expense statement included a $2,150 payment for the mortgage and insurance on the marital residence, which was ordered sold. Although both parties will need to find a new place to live, it is likely neither of them will need or be able to afford to reside in a home the size and cost of the marital residence, which has five bedrooms and four bathrooms.

The Trial Court found that Wife did not need to be rehabilitated. Given the level of Wife's education, her work history, and other relevant factors, we agree with that finding. When concluding that transitional alimony was the proper form of alimony to award, the Trial Court stated:

> [T]he Court had considered the factors that are set out in Tennessee Code Annotated 36-5-121. Based on those factors, the Court finds that she is entitled to alimony in the nature of transitional alimony. In making this determination, the Court finds . . . [that Wife] is economically disadvantaged as evidence[d] by the difference in her ability to earn as opposed to that of Mr. Covington. . . .

Based on Wife's demonstrated need for transitional alimony and Husband's ability to pay such alimony, we affirm the Trial Court's determination that Wife should receive transitional alimony in the amount of $3,000 per month until the marital residence is sold. We find, however, that the evidence preponderates against the Trial Court's finding

that Wife proved either her need for $4,000 per month in alimony after the sale of the marital residence, or that Husband has the ability to continue paying alimony at that amount.

We also are troubled by the fact that Wife earned $70,000 per year as recently as 2003. The fact that Wife left her job because she felt it was too stressful does not eliminate her having an earning capacity greater than the $20,000 as found by the Trial Court. A great many jobs people work at every day are stressful. Further, we find Wife's argument that Husband has the ability to pay her this amount of alimony by working longer hours than he does, despite the fact that Wife apparently has done very little to change her situation in order to earn additional money herself, unpersuasive. We, therefore, modify the transitional alimony award to reflect an award of $2,000 per month from the time the house is sold until "the death of either party, the remarriage of the Wife or until March 1, 2015."

Having affirmed the Trial Court's finding that Wife does not need to be rehabilitated, it necessarily follows that we reject Wife's claim that she is entitled to rehabilitative alimony once the transitional alimony ends. We also note that Wife's request for "rehabilitative" alimony from the time the transitional alimony ends until she will start drawing her retirement would in no way "rehabilitate" Wife and, as such, would be inappropriate as rehabilitative alimony.

In modifying the alimony award, we also note that "[t]he parties' incomes and assets will not always be sufficient for them to achieve the same standard of living after divorce that they enjoyed during the marriage." *Robertson v. Robertson*, 76 S.W.3d 337, 340 (Tenn. 2002). It is evident from the record before us that once Wife voluntarily quit her employment with State Farm and gave up her $70,000 per year income, the parties continued to live far beyond their means, and this would be so even if Husband had not improperly dissipated the estate by spending marital funds on Marshall. Likewise, the evidence shows that both parties' post-divorce standard of living likely will be lower even than what they actually could have afforded before the divorce.

The next issue is Husband's claim that the Trial Court erred when it awarded Wife $25,024.25 in alimony in solido toward payment of her attorney fees. An award of alimony in solido for payment of attorney fees likewise should be based on the factors set forth in Tenn. Code Ann. § 36-5-121(i), and is appropriate when the spouse seeking attorney fees does not have adequate funds to pay his or her legal expenses. *See Young v. Young*, 91 S.W.3d 777, 783 (Tenn. Ct. App. 2002). Conversely, a spouse with sufficient property or income to pay his or her attorney fees is not entitled to be compensated. *Koji v. Koji*, 42 S.W.3d 94, 98 (Tenn. Ct. App. 2000). If a spouse is receiving alimony intended to sustain that spouse, and he or she would be required to deplete those funds in order to pay attorney fees, then an award of attorney fees is proper. *See Baton v. Baton*, 769 S.W.2d 849, 862

(Tenn. Ct. App. 1988). If Wife is ordered to pay her attorney fees, she will be required to deplete other funds awarded to her, in particular the transitional alimony. We cannot conclude that the Trial Court abused its discretion when it ordered Husband to pay Wife's attorney fees in the amount of $25,024.25. That portion of the final decree is affirmed.

The final issue is Wife's request for an award of attorney fees incurred on appeal. Exercising our discretion, considering all relevant factors, and in light of the manner in which the issues were resolved, we decline to award Wife attorney fees incurred on appeal.

## Conclusion

We modify the amount of the Trial Court's award of transitional alimony from the time the marital residence is sold to be an award of $2,000 per month for that period. The judgment of the Trial Court is affirmed as modified. This cause is remanded to the Trial Court solely for collection of the costs below. Costs on appeal are taxed one-half to the Appellant, Robert E. Covington, and his surety, and one-half to the Appellee, Barbara Covington, for which execution may issue, if necessary.


_____
D. MICHAEL SWINEY, JUDGE