# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
June 30, 2015 Session

## YVONNE WATERS v. DONALD WATERS

**Appeal from the Circuit Court for McMinn County**
**No. 2013-CV-267     J. Michael Sharp, Judge**

---

**No. E2014-01768-COA-R3-CV-FILED-AUGUST 20, 2015**

---

This divorce action involves a marriage of twenty-seven years' duration.  Both parties were employed outside the home throughout the marriage.  The parties kept their finances separate during the marriage, maintained separate bank accounts, and divided household expenses equally.  At the time of trial, the wife had accumulated a significantly larger amount of money, despite having a much lower earning capacity.  The trial court therefore determined that the wife had made a greater contribution to the marital estate and awarded her approximately 68% of the marital estate upon divorce.  The court further awarded the wife her attorney's fees and costs.  The husband timely appealed.  We affirm the trial court's division of the parties' marital property.  We reverse the trial court's award of attorney's fees incurred at trial to the wife, but we affirm the award of discretionary costs in the amount of $2,713.  The wife's request for an award of attorney's fees on appeal is denied.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Reversed in Part; Case Remanded

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., C.J., and JOHN W. MCCLARTY, J., joined.

Philip M. Jacobs, Cleveland, Tennessee, for the appellant, Donald Waters.

D. Mitchell Bryant, Athens, Tennessee, for the appellee, Yvonne Waters.

### OPINION

### I.  Factual and Procedural Background

This divorce action was filed on August 5, 2013, by the plaintiff, Yvonne Waters ("Wife"), against the defendant, Donald Waters ("Husband").  The parties were married

in 1987 after cohabitating for ten years, and they separated in May 2013. No children were born of the marriage. At the time of trial, Wife was seventy-seven years old and Husband was sixty-seven years of age.

Wife maintained two jobs throughout the marriage. Her full-time employment during the week was as a food service manager for an elementary school. In addition, Wife was employed on a part-time basis as a cashier and hostess in a restaurant on the weekends. Wife held both jobs at the time of trial. Husband was self-employed as a long-haul truck driver for a substantial portion of each year. According to Husband, he typically enjoyed approximately six weeks off per year, but as Wife explained, Husband actually only worked seven to eight months annually. The proof demonstrated that Wife earned a combined gross income of approximately $21,000 to $26,000 per year during the four years prior to trial. Husband reported gross income of approximately $72,000 to $93,000 during the same time period but claimed to have substantial business expenses related to depreciation, taxes, fuel, and vehicle repairs.

Wife testified that in May 2013, Husband left the marital residence for approximately two weeks. She was unaware of his whereabouts. When he returned, he told Wife that he had found another woman he could not live without. Husband denied this characterization of the parties' conversation, however, stating that he merely informed Wife he wanted a divorce. Husband subsequently vacated the marital residence and moved into a home formerly owned by his deceased mother.

During trial, Wife's counsel questioned Husband regarding an alleged paramour, Ms. C., who was shown to visit Husband's home frequently. Husband denied that he and Ms. C. had been intimate, stating that they were just friends and often went fishing together. Ms. C. also dismissed characterization of the relationship as intimate, likewise claiming that she and Husband were merely friends. Having met Husband in May 2013, Ms. C. admitted that the two had been on trips and had dined out together. When asked, Ms. C. related that she could not remember if Husband had ever told her he loved her. The private investigator hired by Wife testified that he served Ms. C. with a subpoena on the eve of trial at Husband's residence and that his associate filmed the couple leaving the residence together on the morning of trial. The private investigator also presented pictures of the two at Husband's home on various occasions.

The parties presented evidence that neither of them entered the marriage with any significant assets. Specifically, Wife had $15,000 from a divorce settlement while Husband possessed a truck. The parties maintained separate finances both prior to and during the marriage, with each party owning his or her own separate bank accounts. During the marriage, the parties purchased real property and built a home thereon. The associated costs were divided equally. The parties in equal fashion contributed to the

2

monthly expenses related to the home, including taxes, insurance, and utilities. Under their agreed arrangement, Husband paid said expenses while Wife reimbursed him for her share. According to the parties, Wife was frugal with her money and saved as much as possible in her bank accounts, certificates of deposit, and individual retirement account. As additional income, Wife had been receiving social security benefits for several years by the time of trial. She emphasized never having spent "one penny" of those benefits.

While Husband also received social security benefits in addition to his employment income, he failed to save or accumulate funds as diligently as Wife. Consequently, Husband did not possess total amounts in his bank accounts equivalent to Wife's at the time of trial. Although Husband claimed to have contributed money to Wife's accounts, Wife denied this claim. Husband could present no proof of such deposits. When questioned, Wife testified that she was solely responsible for the purchase of all groceries during the marriage, as well as buying clothing for Husband and gifts for family members. According to Wife, she had paid all expenses related to the marital residence since Husband had left.

Following the presentation of proof, the trial court entered an order granting a divorce to Wife on the basis of Husband's adultery and inappropriate marital conduct. The trial court specifically found that while Wife and the private investigator were credible witnesses, Husband and Ms. C. were not. The court then examined the applicable statutory factors regarding an equitable division of marital assets, choosing to adopt Wife's proposed distribution. Accordingly, the court directed the parties to sell the marital residence and divide the proceeds equally. The court also awarded numerous certificates of deposit and bank accounts to Wife along with the bulk of the parties' personalty. Wife maintained a Tennessee Consolidated Retirement System retirement fund, of which the court awarded 66.25% to Wife and 33.75% to Husband. In its overall distribution of the remaining marital property, the trial court awarded approximately 68% of the assets to Wife and roughly 32% to Husband. In addition, the trial court awarded Wife $11,563 in attorney's fees and costs. Husband has appealed the trial court's final judgment.

## II. Issues Presented

Husband presents the following issues for our review, which we have restated slightly:

1. Whether the trial court erred in its division of the marital estate.

2. Whether the trial court erred in awarding Wife her attorney's fees at trial.

3

Wife presents an additional issue:

3. Whether Wife should receive an award of attorney's fees incurred in defending this appeal.

## III. Standard of Review

In a case involving the proper classification and distribution of assets incident to a divorce, our Supreme Court has elucidated the applicable standard of review as follows:

> This Court gives great weight to the decisions of the trial court in dividing marital assets and "we are disinclined to disturb the trial court's decision unless the distribution lacks proper evidentiary support or results in some error of law or misapplication of statutory requirements and procedures." *Herrera v. Herrera*, 944 S.W.2d 379, 389 (Tenn. Ct. App. 1996). As such, when dealing with the trial court's findings of fact, we review the record de novo with a presumption of correctness, and we must honor those findings unless there is evidence which preponderates to the contrary. Tenn. R. App. P. 13(d); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). Because trial courts are in a far better position than this Court to observe the demeanor of the witnesses, the weight, faith, and credit to be given witnesses' testimony lies in the first instance with the trial court. *Roberts v. Roberts*, 827 S.W.2d 788, 795 (Tenn. Ct. App. 1991). Consequently, where issues of credibility and weight of testimony are involved, this Court will accord considerable deference to the trial court's factual findings. *In re M.L.P.*, 228 S.W.3d 139, 143 (Tenn. Ct. App. 2007) (citing *Seals v. England/Corsair Upholstery Mfg. Co.*, 984 S.W.2d 912, 915 (Tenn. 1999)). The trial court's conclusions of law, however, are accorded no presumption of correctness. *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 744-45 (Tenn. 2002).

*Keyt v. Keyt*, 244 S.W.3d 321, 327 (Tenn. 2007).

Further, as this Court has previously held:

> Because Tennessee is a "dual property" state, a trial court must identify all of the assets possessed by the divorcing parties as either separate property or marital property before equitably dividing the marital estate. Separate property is not subject to division. In contrast, Tenn. Code Ann. §36-4-121(c) outlines the relevant factors that a court must consider when equitably dividing the marital property without regard to

4

fault on the part of either party. An equitable division of marital property is not necessarily an equal division, and §36-4-121(a)(1) only requires an equitable division.

*McHugh v. McHugh*, No. E2009-01391-COA-R3-CV, 2010 WL 1526140 at *3-4 (Tenn. Ct. App. Apr. 16, 2010) (internal citations omitted). *See also Manis v. Manis*, 49 S.W.3d 295, 306 (Tenn. Ct. App. 2001) (holding that appellate courts reviewing a distribution of marital property "ordinarily defer to the trial judge's decision unless it is inconsistent with the factors in Tenn. Code Ann. § 36-4-121(c) or is not supported by a preponderance of the evidence.").

## IV. Distribution of Marital Estate

Husband asserts that the trial court erred in its equitable division of the parties' marital property. The issue requires a review of the applicable statutory provisions.

Tennessee Code Annotated § 36-4-121 (2014) provides in pertinent part:

(a)(1) In all actions for divorce or legal separation, the court having jurisdiction thereof may, upon request of either party, and prior to any determination as to whether it is appropriate to order the support and maintenance of one (1) party by the other, equitably divide, distribute or assign the marital property between the parties without regard to marital fault in proportions as the court deems just.

* * *

(1)(A) "Marital property" means all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce, except in the case of fraudulent conveyance in anticipation of filing, and including any property to which a right was acquired up to the date of the final divorce hearing, and valued as of a date as near as reasonably possible to the final divorce hearing date. In the case of a complaint for legal separation, the court may make a final disposition of the marital property either at the time of entering an order of legal separation or at the time of entering a final divorce decree, if any. If the marital property is divided as part of the order of legal separation, any property acquired by a spouse thereafter is deemed separate property of that spouse. All marital property shall be valued as of a date as near as possible to the date of entry of the order finally dividing the marital property.

(B) "Marital property" includes income from, and any increase in value during the marriage of, property determined to be separate property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation, and the value of vested and unvested pension, vested and unvested stock option rights, retirement or other fringe benefit rights relating to employment that accrued during the period of the marriage.

(C) "Marital property" includes recovery in personal injury, workers' compensation, social security disability actions, and other similar actions for the following: wages lost during the marriage, reimbursement for medical bills incurred and paid with marital property, and property damage to marital property.

(D) As used in this subsection (b), "substantial contribution" may include, but not be limited to, the direct or indirect contribution of a spouse as homemaker, wage earner, parent or family financial manager, together with such other factors as the court having jurisdiction thereof may determine.

* * *

(c) In making equitable division of marital property, the court shall consider all relevant factors including:

(1) The duration of the marriage;

(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

(4) The relative ability of each party for future acquisitions of capital assets and income;

(5)(A) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

(B) For purposes of this subdivision (c)(5), dissipation of assets means wasteful expenditures which reduce the marital property available for equitable distributions and which are made for a purpose contrary to the marriage either before or after a complaint for divorce or legal separation has been filed.

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10) The amount of social security benefits available to each spouse; and

(11) Such other factors as are necessary to consider the equities between the parties.

It was undisputed at trial that virtually all of the parties' property was marital. Separate property included a few small items of personalty and Husband's interest in the home where he was residing, which formerly was owned by his deceased mother. The trial court therefore examined the above factors in order to determine how to fashion an equitable distribution of the marital assets. Husband asserts that the trial court erred in awarding the bulk of the marital estate to Wife, arguing that the trial court improperly relied upon Husband's fault and placed too much emphasis on Wife's frugality. Further, Husband argues that the trial court erroneously found that Husband had a greater earning capacity than Wife because his employment expenses negated most of his income. Following a thorough review of the evidence and the statutory factors, we conclude that the trial court properly considered the proof and the appropriate statutory factors to effect an equitable distribution of the parties' marital assets.

We note initially that the trial court did not consider the parties' fault in making its equitable distribution of marital assets. *See* Tenn. Code Ann. § 36-4-121 (a)(1) ("In all actions for divorce or legal separation, the court having jurisdiction thereof may . . . equitably divide, distribute or assign the marital property between the parties without regard to marital fault in proportions as the court deems just."). Rather, the trial court

7

examined each appropriate statutory factor in turn, noting at the outset that the parties' twenty-seven-year marriage was of lengthy duration. The court found that for both parties, their overall physical health and mental health were excellent. With regard to the parties' vocational skills and earning capacities, the court determined that both parties were employed outside the home throughout the duration of the marriage. The court also found Wife to be an excellent worker, having held her primary job for thirty-nine years and her secondary position for twenty-six years. Similarly, the court found that Husband had also held the same trucking job for many years. Observing that most people would be "slowing down" if experiencing Wife's advancing years, the court determined that although Wife maintained her employment at both jobs, she could not continue to do so indefinitely.

Continuing in its analysis, the trial court concluded that statutory factor number three (contribution by one party to the education, training or increased earning power of the other party) was inapplicable to this action. Regarding factor number four, the court found great disparity between the parties' earning capacities. In specific terms, the court determined that Husband's gross income was more than three times that of Wife in most years, which trend would most certainly continue in the future. The court also determined that Husband would enjoy a greater number of years to continue earning income than Wife, based on the age disparity between the parties.

With regard to factor number five, the trial court found that although both parties had contributed to the marital estate, Wife's contribution was greater based on her frugality and ability to save money. Bearing in mind the parties' "unique" financial arrangement of keeping their monies separate throughout the marriage, the court explained that Wife had saved a much larger amount of money than had Husband, despite her limited income. The court again observed that Husband earned three to four times as much as Wife. Although Husband clearly incurred expenses related to the operation of his truck, according to the court, there was no evidence that those expenses would "come anywhere near dissipating his personal income to a level anywhere near what Mrs. Waters was making." The court continued in its findings, stating in pertinent part:

> In fact, the court finds, based upon all of the evidence before the court, that Mr. Waters' net disposable income is and has always been far greater than the net disposable income of Mrs. Waters throughout the marriage. It is obvious to the court, that Mr. Waters simply chose to live a much more affluent lifestyle when he was on the road, or even when he wasn't on the road, given the equal expenditures of the parties for household items and given the relative amounts that each of the parties saved during the course of the marriage. . . . In addition, the court finds that Mrs. Waters also served as the homemaker, and kept and maintained the home for the couple during

8

this 26 plus year marriage.

As previously referenced, by the time of trial neither party owned a significant separate estate. Moreover, at the time of the marriage, the parties' respective separate estates were similar in value. The trial court determined factor number eight (present economic circumstances) in this instance to be duplicative of factor number five (contributions and dissipation). The court also found factor number nine (tax consequences) to be inapplicable. Regarding factor number ten, social security benefits, the court determined that while both parties were receiving such benefits, the evidence demonstrated that Wife received a slightly greater monthly benefit than Husband.

Finally, concerning factor number eleven, "other factors as are necessary to consider the equities between the parties," the trial court again noted that Wife had saved a much greater amount of money than Husband throughout the marriage by being frugal and employing a more modest lifestyle. The court thus adopted Wife's proposed division of the parties' bank accounts and certificates of deposit by awarding Wife the accounts and certificates in her name and awarding Husband his accounts and certificates. Further, the court ordered that Wife's Tennessee Consolidated Retirement System account be awarded 66.25% to Wife and 33.75% to Husband, based upon Husband's suggestion. In the overall distribution of marital property, without including Wife's Tennessee Consolidated Retirement System account, the trial court awarded approximately 68% of the marital estate to Wife and 32% of the marital estate to Husband.

The evidence does not preponderate against the trial court's findings. Husband demonstrated a significantly greater earning capacity than Wife, and the ten-year difference in their ages would likely afford Husband a longer period of time within which to earn income and accumulate assets. Wife demonstrated an exemplary ability to save money, resulting in a larger contribution by her to the marital estate. In the future, Wife may well be required to utilize those savings in order to defray her living expenses.

Our review of the evidence in this matter, considering the statutory factors delineated in Tennessee Code Annotated § 36-4-121(c), leads us to the conclusion that the trial court's division of marital property is equitable. As previously stated, "This Court gives great weight to the decisions of the trial court in dividing marital assets and 'we are disinclined to disturb the trial court's decision unless the distribution lacks proper evidentiary support or results in some error of law or misapplication of statutory requirements and procedures.'" *See Keyt*, 244 S.W.3d at 327 (quoting *Herrera v. Herrera*, 944 S.W.2d 379, 389 (Tenn. Ct. App. 1996)). The court's equitable division of marital property holds proper evidentiary support, and we find no error of law in the court's application of the statutory requirements and procedures. Ergo, we affirm the trial court's equitable distribution of the marital estate.

9

V. Attorney's Fees at Trial

Husband also asserts that the trial court erred in awarding Wife $11,563 to compensate her for attorney's fees and costs incurred in this action. As our Supreme Court observed in *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011):

> It is well-settled that an award of attorney's fees in a divorce case constitutes alimony *in solido*. The decision whether to award attorney's fees is within the sound discretion of the trial court. As with any alimony award, in deciding whether to award attorney's fees as alimony *in solido*, the trial court should consider the factors enumerated in Tennessee Code Annotated section 36-5-121(i). A spouse with adequate property and income is not entitled to an award of alimony to pay attorney's fees and expenses. Such awards are appropriate only when the spouse seeking them lacks sufficient funds to pay his or her own legal expenses, or the spouse would be required to deplete his or her resources in order to pay them. Thus, where the spouse seeking such an award has demonstrated that he or she is financially unable to procure counsel, and where the other spouse has the ability to pay, the court may properly grant an award of attorney's fees as alimony.

(Internal citations omitted). Further, this Court has stated:

> Our review of an award of attorney's fees is guided by the principle that "'the allowance of attorney's fees is largely in the discretion of the trial court, and the appellate court will not interfere except upon a clear showing of abuse of that discretion.'" *Mimms v. Mimms*, 234 S.W.3d 634, 641 (Tenn. Ct. App. 2007) (quoting *Taylor v. Fezell*, 158 S.W.3d 352, 359 (Tenn. 2005)). "Reversal of the trial court's decision [regarding] attorney fees at the trial level should occur 'only when the trial court applies an incorrect legal standard, reaches a decision that is illogical, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party.'" *Church v. Church*, 346 S.W.3d 474, 487 (Tenn. Ct. App. 2010).

*Hernandez v. Hernandez*, No. E2012-02056-COA-R3-CV, 2013 WL 5436752 at *8 (Tenn. Ct. App. Sept. 27, 2013).

The statutory scheme regarding alimony states in pertinent part:

10

(i) In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3) The duration of the marriage;

(4) The age and mental condition of each party;

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in § 36-4-121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-121.

Husband argues that the trial court improperly based the award of attorney's fees solely on his fault. Conversely, Wife contends that the trial court also considered her lower earning capacity and advanced age, including her inability to continue working at the same pace indefinitely. Our review of the record in this matter, however, demonstrates that Husband appears to be correct.

Regarding its award of attorney's fees, the trial court stated in pertinent part:

The court finds that Mr. Waters is guilty of inappropriate marital conduct as set out above. There is no question that Mrs. Waters has been a faithful and devoted wife, and an extremely hard worker throughout the entirety of this marriage. There is also no question that Mr. Waters began an inappropriate marital relationship, at a minimum in May of 2013, and at a maximum possibly before that. The court finds that Mr. Waters continues in this inappropriate marital relationship, and the court finds that Mr. Waters was intentionally untruthful with the court regarding this issue, as well as being intentionally untruthful with Mrs. Waters regarding this issue. Based upon all of the court's findings, the court holds that Mrs. Waters is entitled to have her attorney fees and all of the court costs fully paid by Mr. Waters.

The trial court's order reveals a singular focus upon Mr. Waters's fault without specific consideration of the other statutory factors. As this Court has often explained, a trial court speaks through its written orders, and the appellate courts review only the trial court's written orders. *See In re Conservatorship of Alexander v. JB Partners*, 380 S.W.3d 772, 777 (Tenn. Ct. App. 2011). Further, as stated in *Gonsewski*, 350 S.W.3d at 105, "Such awards are appropriate only when the spouse seeking them lacks sufficient funds to pay his or her own legal expenses, or the spouse would be required to deplete his or her resources in order to pay them." Such is not the circumstance in the case at bar inasmuch as Wife was awarded a large share of liquid assets with which she could pay her attorney's fees. Therefore, we reverse the trial court's award of attorney's fees to Wife.

We note, however, that the trial court's award to Wife of $11,563 also included court reporter fees and other court costs that are allowable, in the court's discretion, to the prevailing party pursuant to Tennessee Rule of Civil Procedure 54.04. We find no abuse of discretion in the allowance of these costs to Wife. We therefore modify the total

12

award from $11,563 to $2,713, subtracting the attorney's fees award of $8,850.

## VI. Attorney's Fees on Appeal

Wife seeks an award of attorney's fees on appeal, stating that the alimony factors weigh in favor of an award of additional fees. Wife asserts that due to her advanced age, her comparatively lower earning capacity, and Husband's fault, she should not have to bear the cost of defending against Husband's appeal. As this Court has stated:

> [I]t is in the sole discretion of this court whether to award attorney's fees on appeal. As such, when this Court considers whether to award attorney's fees on appeal, we must be mindful of "the ability of the requesting party to pay the accrued fees, the requesting party's success in the appeal, whether the requesting party sought the appeal in good faith, and any other equitable factor that need be considered."

*Parris v. Parris*, No. M2006-02068-COA-R3-CV, 2007 WL 2713723 at *13 (Tenn. Ct. App. Sept. 18, 2007) (quoting *Dulin v. Dulin*, No. W2001-02969-COA-R3-CV, 2003 WL 22071454 (Tenn. Ct. App. Sept. 3, 2003)) (other internal citations omitted).

We are mindful of the fact that Husband was moderately successful on appeal, and we again note that Wife was awarded substantial liquid assets in the divorce from which to pay her attorney's fees incurred during appellate review. Therefore, we conclude that this is not an appropriate case for an award of attorney's fees on appeal.

## VII. Conclusion

For the reasons elucidated above, we affirm the trial court's equitable distribution of the parties' marital property. We reverse the trial court's award of attorney's fees to Wife, and we subtract $8,850 from the trial court's award of fees and costs totaling $11,563, thereby modifying that award to the amount of $2,713. We deny Wife's request for an award of attorney's fees on appeal. Costs on appeal are assessed one-half to the appellant, Donald Waters, and one-half to the appellee, Yvonne Waters. This case is remanded to the trial court, pursuant to applicable law, for collection of costs assessed below.

_____
THOMAS R. FRIERSON, II, JUDGE

13