IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
January 18, 2022 Session

## MADELINE LEE WILLIAMS v. JOSHUA DWAIN WILLIAMS

Appeal from the Circuit Court for Bradley County
No. V-19-346        Lawrence H. Puckett, Judge

_____

### No. E2021-00432-COA-R3-CV
_____

This appeal arises from a divorce action in which the trial court determined that both the husband and the wife had proven their grounds for divorce and declared the parties divorced pursuant to Tennessee Code Annotated § 36-4-129(b). The trial court also (1) declined to adopt the wife's proposed permanent parenting plan, (2) determined that the separate assets she contributed to the marriage had become marital property through transmutation, and (3) declined to award attorney's fees to her as alimony *in solido*. The wife has appealed, and the husband seeks attorney's fees and costs on appeal, characterizing the wife's appeal as frivolous. We affirm the trial court's final order of divorce but modify the order to prohibit the husband from consuming alcohol during his co-parenting time. We decline to award the husband attorney's fees and costs on appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed as Modified; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and KRISTI M. DAVIS, J., joined.

Randy Sellers, Cleveland, Tennessee, for the appellant, Madeline Lee Williams.

Corrin P. Fulton, Chattanooga, Tennessee, for the appellee, Joshua Dwain Williams.

## OPINION

### I. Factual and Procedural Background

The plaintiff, Madeline Lee Williams ("Wife"), and the defendant, Joshua Dwain Williams ("Husband"), were married on September 6, 2014, and separated on May 27, 2019. The parties have one daughter ("the Child"), who was born in May 2018. Wife filed

a complaint for divorce in the Bradley County Circuit Court ("trial court") on July 1, 2019. In her complaint, Wife sought a divorce based upon Husband's inappropriate marital conduct and, alternatively, the parties' irreconcilable differences. Wife included a proposed temporary parenting plan, requesting that she be designated primary residential parent, that the Child reside with her at all times, and that Husband's co-parenting time be supervised. On July 15, 2019, Husband filed an answer and counter-complaint in which he also alleged inappropriate marital conduct, opposed Wife's proposed temporary parenting plan, and requested that the parties share co-parenting time equally.

On July 15, 2019, Wife filed a petition in the Bradley County General Sessions Court ("general sessions court") for an order of protection against Husband, alleging that he had been arrested on July 14, 2019, for domestic assault against Wife while in the presence of the Child.[1] As a result, the general sessions court entered an *ex parte* order of protection against Husband on the same day. On July 19, 2019, Husband filed a motion in the trial court seeking a restraining order against Wife. In his petition, Husband alleged that Wife had initiated arguments; attacked him verbally; and recorded, filmed, and harassed him throughout the pendency of the divorce. With respect to the July 14, 2019 incident, Husband averred that Wife or her mother had called and made false allegations to the police, resulting in his arrest. Husband requested an order to prevent Wife from coming within one hundred feet of him or making false allegations against him.

On July 30, 2019, Wife filed a request to voluntarily dismiss the order of protection. Following a hearing in the trial court on July 30, 2019, the trial court entered an order on August 8, 2019, announcing that the parties had entered into a mutual restraining order. The court also ordered that Husband would have supervised co-parenting time up to three times per week, to be supervised by Solomon Family Solutions.

The trial court conducted another hearing on August 15, 2019, with respect to the parties' opposing temporary parenting plans. As a result, the trial court entered a temporary parenting plan order ("Temporary Parenting Plan") on October 2, 2019, providing the following instructions, *inter alia*, to the parties:

> [Husband] shall not consume alcohol while the child is in his care during his co-parenting time set forth below, nor shall he consume alcohol prior to picking the child up for his co-parenting time.
>
> The Court believes [Husband] has an alcohol problem and based upon [Husband's] testimony that he will attend Celebrate Recovery, the Court

---

[1] Although the record is unclear as to whether Wife filed the petition for an order of protection in the trial court or the general sessions court, Wife states in her appellate brief that she filed the petition in the general sessions court and that the general sessions court issued the *ex parte* order of protection. It appears, however, that the trial court ultimately dismissed the order of protection and entered a mutual restraining order.

hereby Orders [Husband] to attend Celebrate Recovery. [Husband] shall also contact and work with the Employee Assistance Program that is offered through his place of employment to get whatever treatment is available to him through their program in addition to participating in the Celebrate Recovery program.

The child shall reside with the [Wife] at all times except during the [Husband's] co-parenting time set forth below.

[Husband] testified that he gets off work between 5:00 p.m. or 5:30 p.m. Therefore, [Husband] will have co-parenting time with the child every Monday, Wednesday and Friday with his co-parenting time beginning when he gets off from work between 5:00 p.m. and 5:30 p.m. and continue until 7:00 p.m. when he returns the child to [Wife]. Given that there is a No Contact Order in place between the [Wife] and [Husband], the child will be picked up from daycare during the weekdays, if she is still in daycare between 5:00 p.m. and 5:30 p.m., when [Husband] gets off work and shall return the child to the maternal grandparents' home at the conclusion of his co-parenting time. If the child is not in daycare when [Husband] gets off work between 5:00 p.m. and 5:30 p.m., then he will pick up the child at the maternal grandparents' home.

[Husband] shall also have one day during each weekend beginning at 9:00 a.m. and continuing until 7:00 p.m. One weekend, [Husband] will have the child Saturday from 9:00 a.m. until 7:00 p.m. and the following weekend, [Husband] will have the child on Sunday from 9:00 a.m. until 7:00 p.m. and shall take the child to the church that the parties have always attended on the Sundays that he has the child.

(Paragraph numbering omitted.) The order also provided that any inconsistencies between the order and the transcript of the court's memorandum opinion would be construed in favor of the memorandum opinion.

Thereafter, Husband filed a motion for holiday co-parenting time and to set a trial date. Husband averred that Wife would not allow him to pick up the Child earlier than 5:00 p.m. even on days when he left work early, and he requested clarification on this point.

On December 20, 2019, Wife filed a motion for civil contempt and to restrict Husband's co-parenting time. Wife alleged that Husband had intentionally violated the Temporary Parenting Plan by consuming alcohol prior to retrieving the Child. Wife specifically claimed that Husband had consumed alcohol the night before and into the early hours of one of his visitation days. Wife also averred that Husband had purchased alcohol while the Child was in his care although she was unable to verify whether he had consumed

- 3 -

the alcohol while the Child was with him.  In addition, Wife alleged that Husband had failed to consistently participate in Celebrate Recovery or his employee assistance program and that he had failed to take the Child to church on Sundays.

After the first day of trial conducted in March 2020, Husband filed a motion on April 17, 2020, requesting that the trial court clarify the Temporary Parenting Plan and grant him additional co-parenting time.  Husband noted that while the plan provided that his co-parenting time would begin between 5:00 p.m. and 5:30 p.m., the transcript of the bench opinion provided that Husband could pick up the Child after leaving work.  Husband additionally requested overnight visitation on weekends and various holidays.  In doing so, Husband noted that Solomon Family Solutions had raised no issues concerning his parenting, that Husband's parenting time had been restricted for nearly a year, and that Wife had failed to present proof that he had consumed alcohol while parenting the Child.

The trial court conducted the second day of trial on July 14, 2020, after a delay caused by the COVID-19 pandemic.  On August 5, 2020, the trial court entered an interim order, which does not appear in the record.  On October 6, 2020, Wife filed a motion to reconsider or alter or amend a post-trial interim order.  Wife's main contention was that the Child would be traveling back and forth between the parents' homes too frequently, and she offered another proposed schedule to minimize the frequency of exchanges.

On November 10, 2020, the trial court entered an order finding Husband not guilty of civil contempt.  The court credited Husband's testimony that he had participated in Celebrate Recovery and taken the Child to church on Sundays.  With respect to Husband's alleged drinking on days of visitation, the court reviewed the testimony presented at trial.  During trial, Kyle Tippens testified that he had witnessed Husband drink a forty-ounce and a twenty-ounce beer at Champy's restaurant at noon on Monday, December 9, 2019.  Private investigator Robert E. Bonnett testified via deposition to witnessing Husband drink a forty-ounce beer at lunch on Friday, November 22, 2019, and a twelve-ounce beer at lunch on Friday, December 6, 2019.  Kay Baker, another private investigator, testified that she had witnessed Husband purchase beer during his lunch hour on March 4, 2020.  Husband had scheduled visits with the Child after work on all of these dates.  The court also noted that Husband had denied drinking on these days and that Wife's mother testified that she did not observe any evidence of alcohol consumption by Husband when he picked up or dropped off the Child for visits.

The trial court concluded that the Temporary Parenting Plan was "not sufficiently specific and objectively clear enough to be the basis for a finding of civil contempt" against Husband for drinking on his lunch hour and at other times alleged.  The court further determined that its order did not clearly prohibit Husband from drinking on his lunch hour.

On the same day, the trial court entered its final order and judgment of divorce.  In its final order, the trial court declared the parties divorced pursuant to Tennessee Code

Annotated § 36-4-129. With respect to each party's allegations against the other and the impact of such allegations on the permanent parenting plan, the court determined that Husband's testimony was credible and that he did not commit domestic abuse against Wife on July 14, 2019. This finding was largely based on the court's review of the tape Wife had recorded of the July 14, 2019 incident. However, the court did find that Wife had punched Husband in the head three times on one occasion, that this constituted inappropriate marital conduct, and that this finding required the court to limit the time the permanent parenting plan would have otherwise provided Wife. The court noted that Wife did not deny that this incident had occurred.

The trial court granted to Husband 130 days of co-parenting time annually with the Child. Specifically, the court determined:

[Husband] shall have parenting time every Monday and Friday from 5:00 p.m. to 7:00 p.m.

[Husband] shall have overnight parenting time every Wednesday from 6:00 p.m. to Thursday at 6:00 p.m.

[Husband] shall have a 48-hour period of parenting time from Friday at 6:00 p.m. to Sunday at 6:00 p.m. every other weekend.

The parties shall split fall and spring breaks and split the two weeks before and after Christmas day through New Years.

The parties shall have equal summertime days from the last week of May through the first week of August.

The parties may exchange the child as frequently as every 2 days during fall and spring breaks, summer, and Christmas equal time except each parent shall have one seven day period to do a summer vacation with the child.

[Husband] shall perform the transportation as he has been doing.

The parties or their agent shall arrive at exchanges at least 15 minutes before the scheduled visit or return of the child in order to perform the blood alcohol test(s) of [Husband] required by this order.

Counsel shall prepare a Permanent Parenting Plan with the above schedule with a child support worksheet attached setting child support as ordered herein.

(Paragraph numbering omitted.)

In addition, the trial court ordered Husband to refrain from drinking "to excess" around the Child and to continue to see an alcohol abuse doctor and attend Celebrate Recovery. In order to ensure Husband's compliance, the court ordered Husband to obtain a breathalyzer application on his cellular telephone or other device that would measure his blood alcohol level to use at exchanges of the Child. According to the order, if Husband were to test below .08%, he would be allowed to test again thirty minutes later. If, on the second test, Husband's blood alcohol level had decreased, he would be allowed to continue with the visit. If Husband were to test at or above .08%, his parenting time would be suspended.

With respect to property distribution, the trial court determined that gifts received from the parties' family members had been transmuted into marital property. Wife requested that the court apply the principles of *Batson v. Batson*, 769 S.W.2d 849 (Tenn. Ct. App. 1988), regarding short-term marriages to the property distribution and award her a greater share of the proceeds from the sale of the marital residence as compensation for the separate funds she brought into the marriage. The court declined to apply *Batson* and awarded Husband a greater share of the proceeds from the sale of the marital residence.

On December 8, 2020, Husband filed a motion to alter or amend the trial court's judgment, arguing that it contained extreme restrictions on Husband's ability to consume alcohol and provided no end date to the restrictions. Husband also argued that the trial court was required to limit Wife's co-parenting time after the court determined that she had committed domestic abuse against him. Husband argued that he should have received fifty percent co-parenting time rather than thirty-six percent. In addition, Husband sought clarity concerning the holiday co-parenting schedule and requested that he not be required to provide transportation for every exchange of the Child.

On January 21, 2021, the trial court conducted a hearing to address Husband's motion to alter or amend the judgment as well as Wife's motion to reconsider or alter or amend the post-trial interim order that had been filed in September 2020. In an order entered on March 31, 2021, the court denied Wife's motion, finding that the final order and judgment of divorce addressed the issues she had raised in her motion. The court also denied Husband's motion, finding that the requirement that Husband utilize the breathalyzer before visitation would remain in effect until Husband filed a petition indicating successful completion of treatment as prescribed by the final order. Furthermore, the court declined to modify the permanent parenting plan order, emphasizing

that Wife had historically performed the majority of the parenting responsibilities. Wife timely appealed.

## II. Issues Presented

Wife has raised the following issues for our review, which we have restated slightly:

1.  Whether the trial court erred in declaring the parties divorced pursuant to Tennessee Code Annotated § 36-4-129 rather than awarding a divorce to Wife based on Husband's inappropriate marital conduct.

2.  Whether the trial court erred in rejecting Wife's proposed permanent parenting plan.

3.  Whether the trial court erred in considering transmutation and commingling in its distribution of martial property instead of placing the parties in the position each would have been in had the marriage not taken place given the marriage's short duration.

4.  Whether the trial court erred in failing to award attorney's fees to Wife.

Husband has raised an additional issue, restated slightly as follows:

5.  Whether this Court should award Husband damages, including his reasonable attorney's fees and costs, for defending against Wife's purportedly frivolous appeal.

## III. Standard of Review

We review a non-jury case *de novo* upon the record with a presumption of correctness as to the findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000). We review questions of law *de novo* with no presumption of correctness. *Bowden*, 27 S.W.3d at 916 (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 924 (Tenn. 1998)); *see also In re Estate of Haskins*, 224 S.W.3d 675, 678 (Tenn. Ct. App. 2006). In addition, the trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *See Morrison v. Allen*, 338 S.W.3d 417, 426 (Tenn. 2011); *Jones v. Garrett,* 92 S.W.3d 835, 838 (Tenn. 2002).

In a case involving the proper classification and distribution of assets incident to a divorce, our Supreme Court has explained the applicable standard of appellate review as follows:

This Court gives great weight to the decisions of the trial court in dividing marital assets and "we are disinclined to disturb the trial court's decision unless the distribution lacks proper evidentiary support or results in some error of law or misapplication of statutory requirements and procedures." *Herrera v. Herrera,* 944 S.W.2d 379, 389 (Tenn. Ct. App. 1996). As such, when dealing with the trial court's findings of fact, we review the record de novo with a presumption of correctness, and we must honor those findings unless there is evidence which preponderates to the contrary. Tenn. R. App. P. 13(d); *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87, 91 (Tenn. 1993). Because trial courts are in a far better position than this Court to observe the demeanor of the witnesses, the weight, faith, and credit to be given witnesses' testimony lies in the first instance with the trial court. *Roberts v. Roberts,* 827 S.W.2d 788, 795 (Tenn. Ct. App. 1991). Consequently, where issues of credibility and weight of testimony are involved, this Court will accord considerable deference to the trial court's factual findings. *In re M.L.P.,* 228 S.W.3d 139, 143 (Tenn. Ct. App. 2007) (citing *Seals v. England/Corsair Upholstery Mfg. Co.,* 984 S.W.2d 912, 915 (Tenn. 1999)). The trial court's conclusions of law, however, are accorded no presumption of correctness. *Langschmidt v. Langschmidt,* 81 S.W.3d 741, 744-45 (Tenn. 2002).

*Keyt v. Keyt*, 244 S.W.3d 321, 327 (Tenn. 2007). *See Manis v. Manis*, 49 S.W.3d 295, 306 (Tenn. Ct. App. 2001) (holding that appellate courts reviewing a distribution of marital property "ordinarily defer to the trial judge's decision unless it is inconsistent with the factors in Tenn. Code Ann. § 36-4-121(c) or is not supported by a preponderance of the evidence.").

This Court reviews a trial court's determination of an appropriate parenting plan according to an abuse of discretion standard. "[C]ustody and visitation arrangements are among the most important decisions confronting a trial court in a divorce case. The needs of the children are paramount; while the desires of the parents are secondary." *Gaskill v. Gaskill*, 936 S.W.2d 626, 630 (Tenn. Ct. App. 1996). As to our review of the trial court's decision concerning attorney's fees in a divorce action, this Court has stated:

Our review of an award of attorney's fees is guided by the principle that "'the allowance of attorney's fees is largely in the discretion of the trial court, and the appellate court will not interfere except upon a clear showing of abuse of that discretion.'" *Mimms v. Mimms,* 234 S.W.3d 634, 641 (Tenn. Ct. App. 2007) (quoting *Taylor v. Fezell,* 158 S.W.3d 352, 359 (Tenn. 2005)).

"Reversal of the trial court's decision [regarding] attorney fees at the trial level should occur 'only when the trial court applies an incorrect legal standard, reaches a decision that is illogical, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party.'" *Church v. Church,* 346 S.W.3d 474, 487 (Tenn. Ct. App. 2010).

*Hernandez v. Hernandez,* No. E2012-02056-COA-R3-CV, 2013 WL 5436752, at *8 (Tenn. Ct. App. Sept. 27, 2013).

IV.  Declaration of Divorce
Pursuant to Tennessee Code Annotated § 36-4-129

The trial court determined that Husband and Wife had each proven grounds for divorce against the other, finding that Wife presented sufficient evidence that Husband had abused alcohol and engaged in inappropriate contact with other women and that Husband presented sufficient evidence that Wife had exhibited a "controlling and abusive confrontation with him to the point that she punched him in the head three times." Inasmuch as the court found that both Husband and Wife were guilty of inappropriate marital conduct under Tennessee Code Annotated § 36-4-101(a)(11), the court declared the parties divorced pursuant to Tennessee Code Annotated § 36-4-129.  Wife contests the trial court's finding that she punched Husband in the head and thereby argues that the court erred in determining that Husband had proven that she was guilty of inappropriate marital conduct.  Instead, she contends that her actions were, in reality, a "frustrated physical effort by this tiny woman to wake up this 6' 6'' 300 lb. drunken man from his stupor."  We conclude that the trial court did not err by the finding that Wife was also guilty of inappropriate marital conduct and declaring the parties divorced pursuant to Tennessee Code Annotated § 36-4-129.

Tennessee Code Annotated § 36-4-129(b) (2021) provides:

> The court may, upon stipulation to or proof of any ground of divorce pursuant to § 36-4-101, grant a divorce to the party who was less at fault or, if either or both parties are entitled to a divorce or if a divorce is to be granted on the grounds of irreconcilable differences, declare the parties to be divorced, rather than awarding a divorce to either party alone.

This provision allows trial courts to declare the parties divorced in the event that both parties demonstrate grounds, rather than awarding one party the divorce.  Wife contends that the trial court erred in declaring the parties divorced pursuant to Tennessee Code Annotated § 36-4-129(b) because she alone proved grounds for divorce.

The pivotal question is whether Husband sufficiently proved that Wife had committed inappropriate marital conduct. Tennessee Code Annotated § 36-4-101(a)(11) (2021) provides: "The husband or wife is guilty of such cruel and inhuman treatment or conduct towards the spouse as renders cohabitation unsafe and improper, which may also be referred to in pleadings as inappropriate marital conduct." Thus, a party may establish inappropriate marital conduct when "either or both of the parties [have] engaged in a course of conduct which (1) caused pain, anguish or distress to the other party and (2) rendered continued cohabitation 'improper,' 'unendurable,' 'intolerable,' or 'unacceptable.'" *Chaffin v. Ellis*, 211 S.W.3d 264, 289 (Tenn. Ct. App. 2006) (quoting *Eldridge v. Eldridge*, 137 S.W.3d 1, 24 (Tenn. Ct. App. 2002)).

The trial court credited Husband's testimony that Wife punched him in the head three times on one occasion. Husband explained that he left the marital home one night and went to a friend's home as the result of an argument between the two parties. According to Husband, when he did not return home, Wife drove to the friend's house to bring Husband home. Husband stated that after returning to the marital home, he lay down on the couch, and Wife hit him in the head three times. The court found that Wife did not deny that this incident had occurred, and Wife has not denied her actions in her appellate brief.

As this Court has previously noted, "[w]hether a party should be awarded a divorce on grounds of inappropriate marital conduct is usually determined by a trial court's assessment of witness credibility." *Dixon Tatum v. Tatum*, No. E2013-02462-COA-R3-CV, 2014 WL 12893281, at *4 (Tenn. Ct. App. Oct. 28, 2014). Moreover, "[i]n a case where the resolution of the issues depends upon the truthfulness of witnesses, the trial judge who has the opportunity to observe the witnesses in their manner and demeanor while testifying is in a far better position than this Court to decide those issues." *Fann v. Fann*, No. W2000-02431-COA-R3-CV, 2001 WL 394858, at *2 (Tenn. Ct. App. Apr. 18, 2001).

In the present case, the trial court credited Husband's testimony that Wife had hit him. Absent clear and convincing evidence, we will not second-guess the court's credibility determination. *See Wells v. Tenn. Bd. of Regents,* 9 S.W.3d 779, 783 (Tenn. 1999) ("[A]ppellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary."). Furthermore, this Court has previously upheld a trial court's finding of inappropriate marital conduct when a wife slapped her husband. *See Dixon Tatum*, 2014 WL 12893281, at *4 ("While the conduct complained of occurred over the course of one day, we cannot discount the fact that Wife unnecessarily introduced a level of physical violence into the admittedly heated discussion.").

Therefore, we conclude that the evidence preponderates in favor of the trial court's finding that Wife had engaged in inappropriate marital conduct. Because the court found that both Wife and Husband had engaged in inappropriate marital conduct, we discern no

error in the court's declaration of divorce pursuant to Tennessee Code Annotated § 36-4-129.

## V. Permanent Parenting Plan Order

Wife argues that by enacting the permanent parenting plan, the trial court "bent over backwards to adopt a plan" in Husband's best interest rather than the Child's best interest, awarded Husband more "child awake time," devised a parenting plan with too many exchanges, failed to sufficiently weigh Husband's history of alcohol abuse, and erred in failing to adopt Wife's proposed permanent parenting plan. The court awarded Wife 235 co-parenting days and Husband 130 co-parenting days in its permanent parenting plan, providing that the Child is to reside with Husband every Monday and Friday from 5:00 p.m. to 7:00 p.m., every Wednesday from 6:00 p.m. to Thursday at 6:00 p.m., and alternate weekends. In response to the evidence concerning Husband's alcohol abuse, the court ordered Husband to perform a breathalyzer test every time he picked up the Child for co-parenting time. The court also ordered Husband to continue alcohol recovery treatment and prohibited him from drinking "to excess" during his co-parenting time. Upon a thorough review of the record, we conclude that the court did not abuse its discretion in rejecting Wife's proposed permanent parenting plan. However, given Husband's troubling history of alcohol abuse, we modify the trial court's permanent parenting plan order to prohibit Husband from consuming alcohol while parenting the Child.

With respect to the standard of review for parenting plans, our High Court has explained:

> This Court has previously emphasized the *limited* scope of review to be employed by an appellate court in reviewing a trial court's factual determinations in matters involving child custody and parenting plan developments. *Armbrister* [*v. Armbrister*], 414 S.W.3d [685] at 692-93 [(Tenn. 2013)] (stating that the appropriate standard of "review of the trial court's factual findings is de novo upon the record, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise").
>
> * * *
>
> Indeed, trial courts are in a better position to observe the witnesses and assess their credibility; therefore, trial courts enjoy broad discretion in formulating parenting plans. *Id.* at 693 (citing *Massey-Holt v. Holt*, 255 S.W.3d 603, 607 (Tenn. Ct. App. 2007)). "Thus, determining the details of parenting plans is 'peculiarly within the broad discretion of the trial judge.'" *Id.* (quoting *Suttles v. Suttles*, 748 S.W.2d 427, 429 (Tenn. 1988)). Appellate courts should not overturn a trial court's decision merely because reasonable minds

could reach a different conclusion. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001).

On appeal, we review a trial court's decision regarding parenting schedules for an abuse of discretion. *Armbrister*, 414 S.W.3d at 693 (citing *Eldridge*, 42 S.W.3d at 88). This Court stated, "'An abuse of discretion occurs when the trial court . . . appl[ies] an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice.'" *Id.* (quoting *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011)); *see also Kelly v. Kelly*, 445 S.W.3d 685, 691-92 (Tenn. 2014) (applying same standard announced in *Armbrister*—a case involving modification of a residential parenting schedule—to a trial court's initial primary residential parenting designation). "Appellate courts should reverse custody decisions 'only when the trial court's ruling falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence.'" *Kelly*, 445 S.W.3d at 696 (quoting *Armbrister*, 414 S.W.3d at 693); *see Eldridge*, 42 S.W.3d at 88.

*C.W.H. v. L.A.S.*, 538 S.W.3d 488, 495 (Tenn. 2017).

In its final order, the trial court began its analysis relative to parenting by considering Tennessee Code Annotated § 36-6-406. *See Armbrister v. Armbrister*, 414 S.W.3d 685, 696 (Tenn. 2013) ("Before forging a residential schedule, a court must first determine whether either parent has engaged in any of the misconduct specified in Tennessee Code Annotated section 36-6-406 . . . ."). The version of Tennessee Code Annotated § 36-6-406(a) (2017) in effect when the instant action was filed provided:[2]

The permanent parenting plan and the mechanism for approval of the permanent parenting plan shall not utilize dispute resolution, and a parent's residential time as provided in the permanent parenting plan or temporary

---

[2] Effective June 11, 2020, the General Assembly has amended Tennessee Code Annotated § 36-6-406(a) to substitute the following language in the opening paragraph:

The permanent parenting plan and the mechanism for approval of the permanent parenting plan shall not utilize dispute resolution, and a parent's residential time as provided in the permanent parenting plan or temporary parenting plan shall be limited if the limitation is found to be in the best interest of the minor child and if the court determines, based upon a prior order or other reliable evidence, that a parent has engaged in any of the following conduct:

*See* 2020 Tenn. Pub. Acts, Ch. 693, § 1 (S.B. 2733). However, because the divorce complaint in this case was filed prior to the effective date of the amendment, the prior version of the statute is applicable here. *See, e.g.*, *In re Braxton M.*, 531 S.W.3d 708, 732 (Tenn. Ct. App. 2017).

parenting plan shall be limited if it is determined by the court, based upon a prior order or other reliable evidence, that a parent has engaged in any of the following conduct:

(1)     Willful abandonment that continues for an extended period of time or substantial refusal to perform parenting responsibilities; or

(2)     Physical or sexual abuse or a pattern of emotional abuse of the parent, child or of another person living with that child as defined in § 36-3-601.

Tennessee Code Annotated § 36-3-601 (2021) provides the following definition of "abuse" in relevant part:

(1)     "Abuse" means inflicting, or attempting to inflict, physical injury on an adult or minor by other than accidental means, placing an adult or minor in fear of physical harm, physical restraint, malicious damage to the personal property of the abused party . . . .

The trial court determined that Husband's actions neither constituted abuse nor required the court to limit Husband's parenting time. In the court's estimation, "the evidence d[id] not sustain [Wife's] contention that [Husband] inflicted or attempted to inflict physical injury upon [Wife] or intended or attempted to place [Wife] in fear of restraint or fear of physical harm or that she in fact feared restraint or physical harm in the incident." However, the court determined that the incident in which Wife struck Husband in the head three times did constitute abuse under Tennessee Code Annotated § 36-3-601 and that this required the court to limit co-parenting time that it would have otherwise provided to Wife.

The trial court's conclusion with respect to these two incidents was based on the court's credibility findings. The court found that Husband's account of the July 14, 2019 incident was credible and supported by Wife's tape recording of the incident. The court also appears to have credited Husband's testimony concerning the incident in which Wife struck him while also noting that Wife did not deny the incident. We emphasize that we will not dismiss a trial court's credibility determination "absent clear and convincing evidence to the contrary." *See Wells*, 9 S.W.3d at 783. Wife has not presented clear and convincing evidence to contradict the court's credibility findings. We therefore conclude that the trial court did not err in determining that Wife's co-parenting time should be restricted pursuant to Tennessee Code Annotated § 36-6-406(a).

- 13 -

The trial court next evaluated whether Tennessee Code Annotated § 36-6-406(d) applied to either parent. Tennessee Code Annotated § 36-6-406(d) (2021) provides, in pertinent part:

A parent's involvement or conduct may have an adverse effect on the child's best interest, and the court may preclude or limit any provisions of a parenting plan, if any of the following limiting factors are found to exist after a hearing:

* * *

    (3)    An impairment resulting from drug, alcohol, or other substance abuse that interferes with the performance of parenting responsibilities;

* * *

    (5)    The abusive use of conflict by the parent that creates the danger of damage to the child's psychological development;

* * *

    (8)    Such other factors or conduct as the court expressly finds adverse to the best interests of the child.

The court found that subsection (5) applied to Wife's conduct and that subsections (3) and (8) "may or may not apply to [Husband's] conduct." The court did not specify whether it utilized these discretionary factors to limit Husband's or Wife's co-parenting time.

The trial court also based its custody determination on the Child's best interest as required by Tennessee Code Annotated § 36-6-106(a). *See* Tenn. Code Ann. § 36-6-106(a) (2021) ("In a suit for annulment, divorce, separate maintenance, or in any other proceeding requiring the court to make a custody determination regarding a minor child, the determination shall be made on the basis of the best interest of the child."). In considering a child's best interest, a trial court should devise an arrangement that "permits both parents to enjoy the maximum participation possible in the life of the child consistent with the factors set out in this subsection (a), the location of the residences of the parents, the child's need for stability and all other relevant factors." *See* Tenn. Code Ann. § 36-6-106(a). These factors include:

    (1)    The strength, nature, and stability of the child's relationship with each parent, including whether one (1) parent has performed the majority of parenting responsibilities relating to the daily needs of the child;

- 14 -

(2) Each parent's or caregiver's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child. In determining the willingness of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, the court shall consider the likelihood of each parent and caregiver to honor and facilitate court ordered parenting arrangements and rights, and the court shall further consider any history of either parent or any caregiver denying parenting time to either parent in violation of a court order;

(3) Refusal to attend a court ordered parent education seminar may be considered by the court as a lack of good faith effort in these proceedings;

(4) The disposition of each parent to provide the child with food, clothing, medical care, education and other necessary care;

(5) The degree to which a parent has been the primary caregiver, defined as the parent who has taken the greater responsibility for performing parental responsibilities;

(6) The love, affection, and emotional ties existing between each parent and the child;

(7) The emotional needs and developmental level of the child;

(8) The moral, physical, mental and emotional fitness of each parent as it relates to their ability to parent the child. The court may order an examination of a party under Rule 35 of the Tennessee Rules of Civil Procedure and, if necessary for the conduct of the proceedings, order the disclosure of confidential mental health information of a party under § 33-3-105(3). The court order required by § 33-3-105(3) must contain a qualified protective order that limits the dissemination of confidential protected mental health information to the purpose of the litigation pending before the court and provides for the return or destruction of the confidential protected mental health information at the conclusion of the proceedings;

(9)  The child's interaction and interrelationships with siblings, other relatives and step-relatives, and mentors, as well as the child's involvement with the child's physical surroundings, school, or other significant activities;

(10)  The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;

(11)  Evidence of physical or emotional abuse to the child, to the other parent or to any other person. The court shall, where appropriate, refer any issues of abuse to juvenile court for further proceedings;

(12)  The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child;

(13)  The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preference of older children should normally be given greater weight than those of younger children;

(14)  Each parent's employment schedule, and the court may make accommodations consistent with those schedules; and

(15)  Any other factors deemed relevant by the court.

In the case at bar, we determine that the trial court considered each of these factors in crafting a permanent parenting plan in which both parents would enjoy maximum participation with the Child consistent with the Child's best interest.

The trial court determined that the first factor weighed in favor of Wife, finding that she had performed the majority of parenting responsibilities relating to the Child's daily needs. The court also concluded that the second factor weighed in favor of Wife, noting that Husband's potential for future performance of parenting responsibilities "depends upon his not drinking alcohol to excess around the child, not drinking and driving, and avoiding intoxication." Concerning the fifth factor, the court determined that Wife had been the primary caregiver, referencing Husband's past reliance on Wife's care for the Child on occasions when he would become intoxicated during the marriage. With respect to the tenth factor, the court found that the Child had always resided with Wife and, as such, this factor weighed in her favor as well.

The trial court determined that the seventh and eleventh factors weighed in favor of Husband. Concerning the seventh factor, the court found that the Child "needs healthy

- 16 -

'sober' parents who do not argue or engage in domestic abuse" and that Husband's drinking did not justify or excuse Wife's striking him. In concluding that the eleventh factor weighed in Husband's favor, the court again referenced Wife's domestic abuse against Husband. The trial court concluded that the fourth, sixth, eighth, ninth, and fourteenth factors weighed equally in favor of the parties and that the third, twelfth, thirteenth, and fifteenth were inapplicable. The court also noted:

> In spite of [Wife's] domestic violence and [Husband's] drinking, the child's relationship with both parents is such that the Court wants to preserve each parent's time with her and provide each parent opportunity to be with her at important times for her such as her attendance at church and to provide the child with full access to each parent's extended family.

Wife does not specifically challenge the trial court's findings or conclusions with respect to these best interest factors. Rather, Wife appears to argue that the court should have adopted her parenting plan due to Husband's history of alcohol abuse. Wife cites two prior opinions of this Court in support of her argument. Wife first relies on *Smithson v. Smithson*, No. M2006-00269-COA-R3-CV, 2006 WL 3827321, at *5 (Tenn. Ct. App. Dec. 28, 2006), wherein the trial court did not award the husband any significant co-parenting time based on his "admitted long-standing addiction to alcohol and drugs." This Court affirmed the trial court's decision, finding "no basis in the record to second guess the trial court's judgment." *Id.* at *6. Wife also relies on *Rogers v. Rogers*, No. E2002-02300-COA-R3-CV, 2003 WL 21673678, at *4 (Tenn. Ct. App. July 14, 2003), wherein the trial court adopted the parenting plan proposed by the husband, who had "admitted that his drinking was a serious problem in the marriage." *Id.* The husband's proposed parenting plan provided for supervised visitation with the husband during which time he was required to "be sober" and "not consume alcoholic beverages during his parenting time" for the first six months of visitation. *Id.* This Court concluded that the latter condition should not have been limited to the first six months of visitation due to the "substantial evidence of the husband's problems with alcohol." *Id.*

Upon review, we determine that the case at bar is factually distinguishable from *Smithson*. In *Smithson*, the husband had admitted his "long-standing addiction to alcohol and drugs," had previously pled guilty to driving under the influence, and had "on previous occasions received treatment for his addictions and relapsed into active alcohol and drug use." *Smithson*, 2006 WL 3827321, at *5. In contrast, in the present case, the trial court found that Wife's claim that Husband was an alcoholic was unsupported by the evidence. Furthermore, the evidence in the record supports the court's finding that Husband had not consumed alcohol around the Child during his co-parenting time since the parties had separated on May 27, 2019—more than a year before the conclusion of trial.

In contrast to the husband in *Smithson*, the trial court herein made the following findings of fact with respect to Husband's alcohol consumption:

- 17 -

[H]e's a hard-working person. He hasn't had alcohol interrupt his work as far as any testimony I've heard. He hasn't had any public intoxication charges, any DUI's. The drinking became a problem between two individuals in this relationship, one of whom did quit drinking and wanted the other to.

\* \* \*

Drinking is also a privilege that people have so long as they don't get drunk. There is no evidence that this man's ever been, quote, drunk, with this child being under his supervision alone. There's just no evidence. And to say you can't drink is . . . an extreme measure for a court to take against someone's otherwise freedom of choice.

Although the evidence supports Wife's contention that Husband has a history of alcohol abuse, we cannot conclude that the trial court erred by declining to limit Husband's co-parenting time to fifty-two days of supervised visits annually.

Nevertheless, Wife did present substantial evidence of Husband's alcohol abuse, and this evidence is reflected in the trial court's findings of fact. The same findings of fact that support the court's decision to require Husband to utilize a breathalyzer test before each exchange and continue alcohol abuse treatment also demonstrate that Husband should not be permitted to consume alcohol during his co-parenting time. Although the court credited Husband's testimony over Wife's with respect to Husband's drinking habits, the court credited other testimony that evinced Husband's alcohol abuse. For example, the trial court found that Husband had acknowledged to his alcohol abuse treatment provider, Dr. Cavins, that he had abused alcohol in the past. The court also found that Husband had testified to drinking five days per week. The court further credited Wife's mother's testimony concerning Husband's excessive use of alcohol during the marriage and Wife's testimony that she called her parents on four or five occasions to the marital residence in response to Husband's intoxication.

In addition, Mr. Tippens testified to witnessing Husband drink sixty ounces of beer within a thirty-minute time period while Husband was on his lunch break on December 9, 2019, a day when Husband had a scheduled visit with the Child after work. The court appeared to credit Mr. Tippens's testimony, although the court could not determine whether Husband actually received the Child for a visit that day.

Morgan Bussey, a friend of Wife, testified that in January 2019, Husband had taken the Child on a drive during a baby shower that Wife hosted for Ms. Bussey. According to Ms. Bussey, Husband smelled like alcohol when he returned. Ms. Bussey also noticed that Husband had driven in the front yard, leaving tire marks through the grass. The trial court

- 18 -

made somewhat conflicting findings of fact concerning Ms. Bussey's testimony. The court credited her testimony that she smelled "something like alcohol on his person" but did not credit her testimony that Husband had driven through his yard as a result of his alcohol consumption. The court further noted that Ms. Bussey did not observe Husband to be intoxicated. However, the court also made the following findings with respect to Husband's alcohol consumption:

> The Court finds that [Husband's] intoxication at times when the child was present observed by wife and her mother (although they or others present were supervising and caring for the child) is not consistent with good judgment by [Husband]. It was not good judgment for him to drink and drive with his child as his wife and Ms. Bussey said occurred January of 2019 while he had sole supervision of the child during a baby shower at the parties' home and he drove around with the child for two hours.

Although the court did not appear to find that Husband had been intoxicated during this event, the court did find that he had been drinking while also driving with the Child present in the vehicle. This incident, in conjunction with other evidence presented of Husband's alcohol abuse, demonstrates that the court should have restricted Husband from consuming alcohol during his co-parenting time in order to ensure the safety of the Child. *See Rogers*, 2003 WL 21673678, at *4 (modifying the trial court's parenting plan order to eliminate the order's provision allowing the husband to consume alcohol during his co-parenting time after the first six months of visitation due to the "substantial evidence of the husband's problems with alcohol.").

Inasmuch as Husband has exhibited a history of alcohol abuse, such that the trial court fashioned a permanent parenting plan order in which Husband would be required to perform a breathalyzer test at every exchange and continue to seek treatment from an alcohol abuse treatment professional, we conclude that the trial court erred by permitting Husband to consume alcohol during his co-parenting time. We therefore modify page fifty-six of the court's final order and judgment of divorce to provide that Husband shall not consume any alcohol during his co-parenting time in substitution of the court's provision that Husband "not abuse alcohol around the child by drinking to excess (at or over the legal limit of .08%) around the child."

Lastly, Wife contends that the trial court erred by granting Husband more "child awake time" than Wife and argues that the schedule provides for too many exchanges. However, Wife fails to explain how the court's co-parenting schedule amounts to an abuse of discretion or anything more than a point upon which reasonable minds could disagree. Wife also fails to make any reference to the best interest factors outlined in Tennessee Code Annotated § 36-6-106(a) or argue that the court misapplied any of these factors. We note that the focus of the parenting plan is the best interest of the Child rather than that of the parent and that "[i]t is not the function of appellate courts to tweak a visitation order in the

hopes of achieving a more reasonable result than the trial court." *See Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001).

The trial court carefully weighed the statutory best interest factors and arrived at the reasonable conclusion that the Child would benefit from seeing both parents frequently. The permanent parenting plan order is the product of this analysis and the court's conclusion. We note that "[w]hen no error in the trial court's ruling is evident from the record, the trial court's ruling must stand." *Id.* Despite Wife's protestations, the court granted her a total of 235 co-parenting days, over one hundred more co-parenting days than Husband, and we discern no error in the manner in which the court scheduled Husband's and Wife's co-parenting days.

Upon thorough review of the record and consideration of Wife's arguments, we conclude that the trial court did not err in rejecting Wife's proposed permanent parenting plan. Having determined that the trial court erred by allowing Husband to consume alcohol while parenting the Child, however, we modify the trial court's permanent parenting plan order to prohibit Husband's consumption of alcohol during his co-parenting time.

## VI. Classification and Distribution of Marital Estate

With regard to the trial court's classification and division of the parties' property, Wife argues that the trial court erred in its distribution of marital property by failing to place the parties in the position they would have been in had the marriage never occurred, pursuant to *Batson*, and by failing to award her a higher proportion of the proceeds from the sale of the marital residence. Wife posits that because she contributed more separate assets to the accumulation of marital assets, she should have received $42,675.99 more than Husband from the marital residence sale proceeds. The trial court rejected Wife's argument in its final order, instead concluding that Wife's separate assets had become marital property by transmutation. Upon careful review, we determine that Wife has waived this issue by failing to comply with Tennessee Court of Appeals Rule 7.

Rule 7 provides in pertinent part:

(a)   In any domestic relations appeal in which either party takes issue with the classification of property or debt or with the manner in which the trial court divided or allocated the marital property or debt, the brief of the party raising the issue shall contain, in the statement of facts or in an appendix, a table in a form substantially similar to the form attached hereto. This table shall list all property and debts considered by the trial court, including: (1) all separate property, (2) all marital property, and (3) all separate and marital debts.

- 20 -

(b)     Each entry in the table must include a citation to the record where each party's evidence regarding the classification or valuation of the property or debt can be found and a citation to the record where the trial court's decision regarding the classification, valuation, division, or allocation of the property or debt can be found.

(c)     If counsel disagrees with any entry in the opposing counsel's table, counsel must include in his or her brief, or in a reply brief if the issue was raised by opposing counsel after counsel filed his or her initial brief, a similar table containing counsel's version of the facts.

Thus, "in all cases where a party takes issue with the classification and division of marital property, the party must include in its brief a chart displaying the property values proposed by both parties, the value assigned by the trial court, and the party to whom the trial court awarded the property." *Akard v. Akard*, No. E2013-00818-COA-R3-CV, 2014 WL 6640294, at *4 (Tenn. Ct. App. Nov. 25, 2014).

Concerning the omission of a Rule 7 table, this Court has previously explained:

[I]t is essential that the parties comply with Rule 7 in order to aid this Court in reviewing the trial court's decision. The table required by Rule 7, allows this Court to easily and correctly determine the valuation and distribution of the marital estate as ordered by the trial court. Further, the Rule 7 table, allows this Court to ascertain the contentions of each party as to the correct valuations and proper distribution, as well as the evidence in the record which the party believes supports its contention. Consequently, a table, in full compliance with Rule 7, is vital as this Court must consider the entire distribution of property in order to determine whether the trial court erred. Moreover, this Court is under no duty to minutely search the record for evidence that the trial court's valuations may be incorrect or that the distribution may be improper.

*Kanski v. Kanski*, No. M2017-01913-COA-R3-CV, 2018 WL 5435402, at *6 (Tenn. Ct. App. Oct. 29, 2018) (quoting *Harden v. Harden*, No. M2009-01302-COA-R3-CV, 2010 WL 2612688, at *8 (Tenn. Ct. App. June 30, 2010)) (internal citations omitted in *Kanski*).

As previously noted, Wife failed to include a Rule 7 table within her appellate brief. Although "this Court may 'suspend the requirements of Rule 7 for 'good cause,'" *Kanski*, 2018 WL 5435402, at *6 (quoting *Hopwood v. Hopwood*, No. M2015-01010-COA-R3-CV, 2016 WL 3537467, at *7 (Tenn. Ct. App. June 23, 2016)) (in turn quoting Tenn. R. Ct. App. 1(b)), we discern no good cause for such a suspension in this case. *See, e.g., Kanski*, 2018 WL 5435402 at *6 (finding "no such cause under the facts of this case" to

suspend the requirements of Rule 7). We therefore deem Wife's issue with respect to the trial court's manner of property distribution to be waived.

## VII. Attorney's Fees at Trial

Wife contends that the trial court erred by failing to award her attorney's fees for the "necessary prosecution to prove conduct to determine grounds for divorce or especially, to implement a Parenting Plan in the child's best interest," which she argues was required due to Husband's "denials and refusals to help remedy the situation with parenting based upon his extreme alcohol abuse." The court declined to award Wife attorney's fees in part due to Wife's ability to pay her own attorney's fees and the evidence that sustained Husband's ground for divorce. Upon careful review, we conclude that the trial court did not err in declining to award Wife's attorney's fees.

Our Supreme Court has previously observed concerning an award of attorney's fees in a divorce action:

> It is well-settled that an award of attorney's fees in a divorce case constitutes alimony *in solido*. The decision whether to award attorney's fees is within the sound discretion of the trial court. As with any alimony award, in deciding whether to award attorney's fees as alimony *in solido*, the trial court should consider the factors enumerated in Tennessee Code Annotated section 36-5-121(i). A spouse with adequate property and income is not entitled to an award of alimony to pay attorney's fees and expenses. Such awards are appropriate only when the spouse seeking them lacks sufficient funds to pay his or her own legal expenses, or the spouse would be required to deplete his or her resources in order to pay them. Thus, where the spouse seeking such an award has demonstrated that he or she is financially unable to procure counsel, and where the other spouse has the ability to pay, the court may properly grant an award of attorney's fees as alimony.

*Gonsewski v. Gonsewski*, 350 S.W.3d 99, 113 (Tenn. 2011) (internal citations omitted). With respect to a trial court's spousal support decision, this Court declines to "second-guess a trial court's decision absent an abuse of discretion." *Id.* at 105. "An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Id.*

In the case at bar, we discern no abuse of discretion. In its final order, the trial court determined:

> The Court declines to award Wife her attorney fees. Such an award must be treated as alimony under, Tenn. Code Ann. § 36-5-121(i).

- 22 -

Considering the age of the parties, (28); their relatively unequal earning capacities (Wife's is greater than husband's by thirty thousand dollars ($30,000.00) per year); their needs that are relatively equal and financial resources (including the Court's division of their marital property which is greater for Wife by sixteen thousand, seven [hundred] thirty-six dollars and sixty cents ($16,736.60)); the marital equities between the parties in light of the six year duration of the marriage; the parties' equal standard of living during the marriage and after divorce; and declining to consider the relative fault of each of the parties, having found each to have sustained their grounds, the Court denies Wife's request for her attorney fees under the statute.

The Court finds that wife is able to pay her own attorney and that husband also sustained his grounds for divorce.

On appeal, Wife neither challenges these findings nor asserts that she lacks sufficient funds to pay her legal expenses. Additionally, we have affirmed the trial court's determination that both Husband and Wife had sustained their alleged grounds of divorce. Thus, we discern no error in the trial court's declination to consider the relative fault of the parties.

We conclude that the trial court did not abuse its discretion by declining to award Wife attorney's fees at trial.

## VIII. Attorney's Fees on Appeal

Husband contends that he should be awarded reasonable attorney's fees and costs, pursuant to Tennessee Code Annotated § 27-1-122, given the allegedly frivolous nature of Wife's appeal. Tennessee Code Annotated § 27-1-122 (2017) provides:

When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

This Court has previously explained:

Parties should not be forced to bear the cost and vexation of baseless appeals. Accordingly, in 1975, the Tennessee General Assembly enacted Tenn. Code Ann. § 27-1-122 to enable appellate courts to award damages against parties whose appeals are frivolous or are brought solely for the

purpose of delay. Determining whether to award these damages is a discretionary decision.

A frivolous appeal is one that is devoid of merit or one that has no reasonable chance of succeeding.

*Young v. Barrow*, 130 S.W.3d 59, 66-67 (Tenn. Ct. App. 2003) (internal citations omitted).

We determine that Wife's appeal was not so devoid of merit as to be deemed frivolous. Therefore, we exercise our discretion to deny Husband's request for attorney's fees and costs on appeal.

## IX. Conclusion

For the foregoing reasons, we affirm the trial court's judgment with the modification that Husband shall be prohibited from consuming alcohol while he is parenting the Child. We decline to award attorney's fees on appeal to Husband. Costs on appeal are taxed to the appellant, Madeline Lee Williams. This case is remanded to the trial court for enforcement of the judgment and collection of costs assessed below.

s/ Thomas R. Frierson, II
THOMAS R. FRIERSON, II, JUDGE